Donald E. NEWBERRY, Appellee,

v.

BARTH, INCORPORATED and Florence Barth, Appellants.

No. 2-55098.

Supreme Court of Iowa.

April 20, 1977.

**712**

Steven A. Weidner, Swisher & Cohrt, Waterloo, for appellants.

Mershon, Snow & Knock, Cedar Falls, for appellee.

Heard by MOORE, C. J., and REES, REYNOLDSON, HARRIS and McCORMICK, JJ.

REYNOLDSON, Justice.

Plaintiff Donald E. Newberry sued defendants Barth, Incorporated and Florence Barth for specific performance of a November 7, 1968 contract to sell a large apartment complex. Defendants appeal from a decree ordering them to specifically perform. We reverse and remand.

Barth, Incorporated was organized under the provisions of Chapter 491, The Code, 1950. The apartment complex was its principal asset. It was purchased from Florence Barth and her husband Paul Barth who died July 29, 1968.

Florence Barth had listed this real estate for sale with the Mack Gable Agency on August 13, 1968 for a sale price of $220,000 terms "cash or possible 45000 down." The listing agreement disclosed the owner as "Barth, Inc." Mrs. Barth testified she thought she had authority to list the property on behalf of the corporation.

At all times pertinent here the articles of incorporation were a matter of record in Black Hawk county recorder's office and in the office of the Secretary of State. It is obvious these articles were carefully drafted to place extensive corporate control in the Federal Housing Commissioner (F.H. A.), sole preferred stockholder. It is also apparent this governmental agency guaranteed or insured the corporate indebtedness for the purchase price of the apartment complex.

These articles provided the corporation could not take the following actions without prior consent of the preferred shareholders: (1) pay for repairs from a reserve fund, (2) remodel, reconstruct or demolish the apartment house, (3) rent apartments below a fixed rate, (4) carry out any basic change in corporate structure such as consolidation, merger, and voluntary liquidation, (5) amend the articles of incorporation, and (6) assign, transfer, dispose of or encumber any real or personal property, "except as permitted by the terms of the mortgage." Preferred stock could be redeemed by the corporation only upon the termination of

any contract of mortgage insurance concerning any indebtedness of the corporation.

This governmental agency was actively exercising its control at all times relevant here. Mrs. Barth, who managed the apartment operation, was permitted to draw as wages $133.28 per month. She had to seek F.H.A. permission to pay for major repairs from a reserve fund.

The articles authorized five preferred shares and 490 common shares. The common shares were owned by Paul Barth, president, 233 shares; Florence Barth, secretary-treasurer, 232 shares; and Addison P. Clark, vice-president, 25 shares. Following Paul Barth's death the office of president was left vacant. His will bequeathed his property to his wife, but the trial record is unclear whether his estate was still being probated and whether his stock had ever been transferred to Florence Barth.

The November 7, 1968 real estate contract, drafted by Mack Gable, called for a purchase price of $210,000—$1000 down and the balance of $209,000 on January 1, 1969. The seller was designated as Florence Barth. By this contract she agreed to "pledge shares in the amount of $13,000," later amended to $16,250. By another amendment on November 8, 1968, Mrs. Barth agreed to "deduct from the sale price the escrow of a [sic] least $25,000 that is in 2 building and loan companys [sic] in Minneapolis."

The purchaser, plaintiff Newberry, thought Florence Barth owned the property, but admitted in the brief time they spent together (when she helped show the real estate) she had never said so.

In defense against the action, defendants assert Florence Barth had no authority to bind the corporation and therefore the latter cannot be compelled to perform the contract. Further, Florence Barth signed the contract upon condition it would be submitted to and approved by her attorney before delivery to the purchaser.

Trial court found both defendants were bound by the sales transaction and ordered both to specifically perform the contract. The ruling states,

"In this case she can readily deliver the corporate property. The articles of incorporation give two-thirds of its common stockholders the right to amend the articles or to dissolve the corporation. Preferred stock may be redeemed at par upon termination of the mortgage insurance which could certainly be done as a part of this transaction."

I. In our *de novo* review we are not required to resolve the issue whether delivery of the sales contract was conditioned on approval of Florence Barth's attorney. On this point there was sharp conflict in the testimony of Mrs. Barth and Mack Gable. Although the latter promptly mailed a copy of the contract to the lawyer, Gable claimed it was not until later that Mrs. Barth attempted to impose this condition. In any event, our holding in the next division makes a factual determination on this point unnecessary.

II. Trial court's findings declared, "The court concludes that the Barth Corporation in every material respect is Florence Barth and that her act in contracting to sell the Barth apartments is binding upon the Barth Corporation."

There is little record support for this finding, which in effect holds Mrs. Barth was the alter ego of Barth, Incorporated and the corporate entity should be disregarded.

The plaintiff is charged with constructive notice of the recorded articles of incorporation. *Dempster Mfg. Co. v. Downs,* 126 Iowa 80, 83, 101 N.W. 735, 736 (1904) ("The corporation is created by the adoption of the articles. These form the very basis of its existence. Every one who deals with it or its stock is charged with knowledge of their contents."). These articles placed many restrictions on Mrs. Barth's ability to manage the corporation. Almost every major decision required prior approval of the preferred stockholders.

Contrary to trial court's finding, there is no evidence Florence Barth "could

readily deliver the corporate property." There was no corporate action approving the sale or even authorizing her to list the corporate assets for sale. Fully as important, there was no prior consent of the preferred stockholder.

Nor is there any evidentiary support for the finding the corporation was in a position to redeem the preferred stock. It could only be redeemed upon termination of the mortgage insurance. There was no proof the mortgagees would permit that, or accept prepayment of the mortgage.

■ This is not a situation in which the corporate entity should be disregarded. Ordinarily the corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice. See *Lakota Girl Scout Council Inc. v. Havey Fund-Raising Mgmt., Inc.,* 519 F.2d 634, 638 (8th Cir. 1975); *Farmers Feed & Supply Co. v. United States,* 267 F.Supp. 72, 76 (N.D.Iowa 1967). Those conditions did not exist here.

Neither is the corporation bound by the attempted sale of virtually all of its assets by Mrs. Barth.

■ A recorded deed gave Newberry constructive notice that Barth, Incorporated owned the apartment complex. § 558.11, The Code; *Bristow v. Lange,* 221 Iowa 904, 912, 266 N.W. 808, 812 (1936). Florence Barth was thus an agent for a disclosed principal. See Restatement (Second) of Agency § 4(1), at 17; § 9, Comment f, at 49 (1958); Seavey, Agency § 9(B), at 17 (1964).

■ We have concluded Mrs. Barth had no actual authority to sell this property. Actual authority includes both express and implied authority. *Grismore v. Consolidated Products Co.,* 232 Iowa 328, 335, 5 N.W.2d 646, 651 (1942).

Express authority is that specifically mentioned by the principal in setting out the extent of the agent's duties. Seavey, Agency, § 8(C), at 12 (1964). The proof here fails to show express authority. More-

over, the articles specifically prohibited conveyance of real estate without prior consent of the preferred stockholders.

■ Implied authority of a corporate officer or agent includes all such incidental authority as is necessary, usual and proper to effectuate the main authority expressly conferred. 19 Am.Jur.2d Corporations § 1163, at 589 (1965). But although a general or managing officer will be presumed, in absence of proof to the contrary, to have authority to contract in the usual course of corporate business, *Mayrath Co. v. Helgeson,* 258 Iowa 543, 550, 139 N.W.2d 303, 307 (1966); *Hobbs v. Homes, Inc.,* 246 Iowa 1195, 1206–1207, 71 N.W.2d 592, 599 (1955); 19 Am.Jur.2d Corporations § 1178, at 603, this implied authority ordinarily does not extend to contracts for the sale of the fixed assets of the corporation. *Mosell Realty Corp. v. Schofield,* 183 Va. 782, 791, 33 S.E.2d 774, 777 (1945); Restatement (Second) of Agency § 195, Comment (b), at 432 (1958); 2 Fletcher, Cyclopedia of Corporations § 605, at 708–709 (1969); see *Brenard Mfg. Co. v. J. D. Sketchley Store,* 185 Iowa 694, 171 N.W. 18 (1919).

■ We next consider whether Mrs. Barth had apparent authority to sell this real estate, examining the conduct of the principal to third persons, as opposed to express and implied (actual) authority in which the manifestations of the principal to the agent are controlling. Seavey, supra, § 8(D), at 13. We have already noted the most significant manifestation, the recorded articles of incorporation which restricted the right to sell real estate. However, the "apparent authority" doctrine takes precedence over the "notice" doctrine. Mere want of authority in fact will not relieve a corporation from the burden of a contract made in reasonable reliance upon such appearance of authority. 2 Fletcher, Cyclopedia of Corporations § 459, at 384; compare Seavey, Agency § 76(A)–(D), at 128–129.

■ In this case the only action taken by the corporation was to install Mrs. Barth as apartment manager. By so doing, it clothed her with authority to perform the

usual and necessary actions of an apartment manager. However, the corporation did nothing to indicate to third persons, and specifically the plaintiff, that Mrs. Barth had authority to sell the real estate. Plaintiff was unaware of the existence of the corporate defendant.

It is clear Florence Barth had no apparent authority to bind Barth, Incorporated to this contract.

Plaintiff has neither pled nor argued the theory of estoppel in this case. In any event, it is merely the tort equivalent to the apparent authority doctrine. Seavey, Agency § 8(E), at 14.

▇ Nor do we find, in this case, there was any "inherent agency" to bind the corporation to the real estate contract. Inherent agency power is derived from the nature of the position held by the agent and extends to acts generally within the powers of persons holding such position. See 2 Fletcher, Cyclopedia of Corporations § 438, at 319–320 (1969); Seavey, Agency § 59(D), at 108. It is generally held no officer or agent of a corporation, by virtue of his office alone, has any authority to sell or make a contract for the sale of the corporation's real estate. 19 Am.Jur.2d Corporations § 1227, at 640; 2 Fletcher, Cyclopedia of Corporations § 605, at 708–710 (1969).

Barth, Incorporated cannot be held liable under agency law for the sales contract executed by Florence Barth.

In holding specific performance will not lie in this case, we do not consider any other recourse which plaintiff may have against Florence Barth.

We reverse and remand for decree in conformance herewith.

REVERSED AND REMANDED WITH DIRECTIONS.