**William DILLON, Appellee,**

v.

**CITY OF DAVENPORT,
Iowa, Appellant.**

No. 84–691.

Supreme Court of Iowa.

April 17, 1985.

James L. Abshier, Sioux City, and Scott Hartsook, Acting Corp. Counsel, Davenport, for appellant.

Robert A. Van Vooren and Dana M. Craig of Lane & Waterman, Davenport, for appellee.

Considered by UHLENHOPP, P.J., and McCORMICK, SCHULTZ, CARTER and WOLLE, JJ.

SCHULTZ, Justice.

This is an appeal and cross-appeal from the judgment ordering specific performance of an agreement between the City of Davenport, as employer, and William Dillon, a city employee. The trial court ordered the City to honor an agreement entered into by its attorney to pay $150,000 to its employee in settlement of his workers' compensation claim. On appeal the City asserts the agreement is not enforceable. The employee cross-appeals and claims he was entitled to an award of interest. We affirm.

On May 15, 1982, Dillon, the City's Director of Purchasing, suffered a heart attack. He maintained it was compensable under workers' compensation and with the aid of his attorney, John J. Carlin, filed a claim for arbitration with the Iowa Industrial Commissioner. The employee had worked closely with the City's legal department. To avoid any conflict, the city council hired a private attorney, Elliot R. McDonald, Jr., to represent the City on the compensation claim. McDonald specializes in litigation involving personal injury claims in workers' compensation and tort.

McDonald proceeded to investigate the claim by deposing the employee's physician. The doctor opined that the heart problem was job related. At the time of the deposition the attorneys discussed settlement possibilities; however, Carlin did not wish to enter negotiations unless McDonald had authority from the City to make a settlement. As a result of this conference, Carlin addressed a letter to McDonald asserting a demand of $186,000. McDonald met with the City Council in a session closed pursuant to Iowa Code section 28A.5(1)(c).[1] The Council discussed a letter that McDonald had written outlining his evaluation of the case and requesting settlement authority up to the sum of $150,000. The Council voted on two alternatives and by a 6–2 vote favored giving McDonald the following authority:

[W]e give him direction and authority to settle up to the amount of $150,000 as recommended in his letter on the condition that he deal with the settlement in terms over a period of time, and announce in the negotiation in the settlement that we do not have $150,000 or $130,000 or $125,000 or whatever figure he would discuss at this point.

Following his meeting with the Council, McDonald made a written offer of settlement of the employee's claim for the sum of $85,000. Carlin was concerned about whether McDonald was authorized to settle the case because he had previously received some settlement overtures from the City Attorney that were contingent on council approval. Carlin indicated that he did not wish to bid against himself. McDonald advised Carlin that he had met with the City Council and had been authorized to settle the case. The attorneys proceeded to negotiate the case, arriving at a settlement in the amount of $150,000, to be paid in installments.

McDonald and Carlin prepared a joint application for submission to the Industrial Commissioner, pursuant to Iowa Code section 85.35, providing that the City would pay $150,000. An additional provision that would have allowed the employee to continue participating in the City's health insurance program at his own expense was also placed in the agreement. This later provision was added after the original settlement agreement and was cleared with the City Attorney and City Administrator who indicated this had been done in other cases in which employees had been terminated. When the joint application was presented to the City Council acting as the City of Davenport, the terms of the settlement were rejected, and McDonald was instructed to withdraw all offers of settlement.

The employee commenced the present equitable action seeking specific performance of the settlement agreement. Prior to trial, through discovery ordered by the court over objection, plaintiff was permitted ac-

---

**1.** For the purposes of this opinion citations to the Iowa Open Meetings Act will be to chapter

28A. Chapter 28A has been transferred to Chapter 21 in the 1985 Iowa Code.

cess to a transcript of tape recordings of closed sessions of the City Council at which his case was discussed. At trial McDonald and Carlin testified that they understood the agreement to be within the scope of the authority given to McDonald, while council members testified they understood that any negotiated agreement was to be submitted to them for approval.

The trial court ordered specific performance of the agreement with the exception of the term concerning plaintiff's continued participation in the City's health insurance plan. The court found that this term exceeded the scope of McDonald's negotiation authority. No interest was awarded on the judgment.

The City appeals and plaintiff cross-appeals from the trial court's decree enforcing the oral agreement to settle the workers' compensation case for the sum of $150,000. The City asserts: (1) that the court should not have permitted discovery of a transcript of a tape recording of a closed session of the city council; (2) that the agreement is not enforceable when not formally adopted by the city council in open session; (3) that the settlement agreement was beyond the actual or apparent authority of the attorney who negotiated it on the City's behalf; (4) the City had a right to a reconsideration or rescission of authority granted its attorney to settle, assuming arguendo that it was otherwise enforceable; (5) that under Iowa Code section 85.-35 the agreement was invalid when not approved in writing; and (6) that the approval of the Industrial Commissioner required by section 85.35 constitutes a condition precedent rendering the agreement unenforceable in the absence of approval. Plaintiff's only complaint is that the order of specific performance of the agreement constitutes a money judgment upon which interest should have been awarded pursuant to Iowa Code section 535.3.

■ I. *Discovery of transcript of closed session.* The City challenges the trial court's pre-trial ruling granting plaintiff's request for production of a transcript of the closed session of the City Council

meeting when the Council met with McDonald. The court concluded that the minutes of this meeting with its attorney were discoverable because an issue in the case concerned the authority of the attorney to negotiate the settlement. The court did provide a protective order preventing disclosure by counsel and allowed the City the opportunity for an in camera hearing with the court concerning protected attorney work product. The City urges that Chapter 28A (1983) requires that the records be sealed and unavailable for public inspection and that a plaintiff should not be able to examine a confidential record merely by filing a lawsuit and issuing a subpoena.

While section 28A.5 provides specific direction concerning the preservation of the occurrences in a closed session and details the extent to which the minutes or a recording of the meeting may be disclosed, it does not specify that the discussions at the closed meeting acquire the status of confidential communications which are privileged from any use other than that specified. Subsection 28A.5(4) does provide that such matters "shall be sealed and shall not be public records open to public inspection," except in an enforcement action after examination by the court in camera; this is not an enforcement action. On the other hand, our discovery rule provides that the parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Iowa R.Civ.P. 122(a). Unquestionably the oral authority provided by the Council to its attorney is relevant evidence on the issue of the attorney's authority to settle the case in question. The City does not raise the question of confidential communication between attorney and client as an issue in this appeal.

■ We must resolve whether the requirement of a sealed record under subsection 28A.5(4) should give way to the broad right of discovery allowed by rule 122(a). Under the limited circumstances of this case, we conclude the trial court correctly denied the City's attempt to shield its action in closed session from discovery by

reliance on subsection 28A.5(4). In so doing we are aware that the tape recording of the session does not become a public record open to public inspection. *Telegraph Herald, Inc. v. City of Dubuque,* 297 N.W.2d 529, 535 (Iowa 1980).

We have conflicting statutes which provide opposite messages. When statutes conflict we attempt to harmonize them in an effort to carry out the meaning and purpose of both statutes as the legislature intended. One obvious legislative purpose of a closed session law is to give the legislative body the opportunity to discuss litigation strategy with counsel without providing the information to litigation opponents. § 28A.5(1)(c) This is especially vital in establishing settlement strategy. The need for secrecy, including sealed tapes and minutes of the meeting, no longer exists when the negotiations cease, which happened in this case when the parties' attorneys consummated a settlement. At the same time, the need to lift the veil of secrecy comes into being when settlement negotiations end with a settlement which is rejected and new litigation, in the form of a suit to enforce the settlement, erupts. The trial court carefully weighed the statute providing for sealed records against the discovery rule allowing an adverse party access to information and struck a proper balance by accommodating the right to discovery without jeopardizing the purposes of section 28A.5(4). Under these limited facts we find no error.

II. *Validity of closed session action.* The City asserts that plaintiff cannot rely on a binding settlement because statutory procedures have not been followed, claiming there is no authority for a binding council vote in a closed session. Thus, the City could only act through a motion or resolution adopted during an open session of the council. The trial court concluded that an offer to compromise, when accepted, constitutes a binding contract of compromise and settlement, citing *Goode v. American Railway Express Co.,* 205 Iowa 297, 215 N.W. 621 (1928). The City does not dispute that a stipulated settlement is a contract which when properly made could be enforced in the same manner as other contracts. It contends that without a resolution adopted in open session there was no binding offer. Therefore, until statutory provisions were complied with, plaintiff's attorney dealt with McDonald at his peril. Plaintiff does not dispute the City's contention that a binding decision to spend money must be preceded by a motion or resolution; he urges that a binding resolution was passed by the majority of the Council in the closed session.

We first address the problem concerning the closed meeting held on March 1, 1983. In attendance were the Mayor, all but one of the council members, the City Attorney, a city staff member, and the City's retained counsel—McDonald. The trial court found as follows: "The case was discussed at some length and at the conclusion of the meeting a vote was taken. McDonald was to have authority to settle the case up to $150,000." In its appellate brief the City downgrades the vote to a "consensus of opinion."

Initially, we cannot agree with the City's characterization of the vote taken at the end of the closed meeting as a "consensus of opinion." A definite proposition was put before the members of the City Council, and an individual vote was taken. We long ago indicated that formalities were not required in a resolution; the only requirement is an expression of the will of the council upon the question of consenting to a certain proposition. *Sawyer v. Lorenzen & Weise,* 149 Iowa 87, 91, 127 N.W. 1091, 1093 (1910). We stated:

A "resolution" is something less formal than an "ordinance" and, generally speaking, is a mere expression of the opinion or mind of the council concerning some matter of administration coming within its official cognizance ..., and no set form of words is essential if the requirement which calls for such expression is met.

*Id.,* 127 N.W. at 1093 (citation omitted.) Following our de novo review, we agree with the conclusion of the trial court that

the City Council adopted a resolution at the closed meeting, authorizing counsel to settle the case.

The City urges that subsection 28A.5(1)(c) authorizes the council to meet in closed session "[t]o discuss strategy with counsel in matters that are presently in litigation ... where its disclosure would be likely to prejudice or disadvantage the position of the governmental body in that litigation," but it does not authorize a binding vote. Thus, such unauthorized action is void. We disagree.

Our construction of section 28A.5(1)(c) determines that a discussion of strategy with counsel in matters in litigation necessarily includes discussion of settlement negotiations. The City concedes that it has the power and authority through its council to settle workers' compensation litigation. Generally, a city's attorney would have no authority to compromise claims, invading the domain of the council which·has the power to litigate matters and to contract. However, a city attorney may bind the municipality to the same extent as any attorney may bind his client. 17 E. McQuillin, The Law of Municipal Corporations § 49.33 (rev. 3d ed. 1982). In a litigated matter the attorney representing a party is in the logical, and perhaps the only, position to conduct negotiations with opposing counsel. The only practical method of providing authority to the city attorney to negotiate is in closed session. To make a public disclosure and alert the opposing side to proposed settlement negotiations would be self-defeating. Consequently, in this limited circumstance a resolution authorizing settlement is merely a part of a strategy discussion with counsel.

We find no merit in the claim that the resolution is void because it was passed in closed session. We have previously held that a violation of Chapter 28A does not render the actions of the public body void or voidable. *Anti-Administration Association v. North Fayette County Community School District,* 206 N.W.2d 723, 725 (Iowa 1973); *Dobrovolny v. Reinhardt,* 173 N.W.2d 837, 840 (Iowa 1970). In 1978,

subsequent to these cases, the legislature prescribed in greater detail when and how a governmental body may hold a closed session and expanded the enforcement remedies. 1978 Iowa Acts ch. 1037, §§ 6, 7 (codified at Iowa Code §§ 28A.5, 28A.6 (1983)). The provisions of subsection 28A.6(3)(c) make illegal actions void if a suit for enforcement is brought within six months of the violation, but only if the court finds that the public interest in the enforcement of a policy of the law outweighs the public interest in sustaining the validity of the action taken in closed session. Although subsection 28A.5(3) does provide the final action shall be taken in an open session, the same sentence was present in the closed session statute in 1971, Iowa Code § 28A.3 (1971), and was quoted in *Anti-Administration Association,* 206 N.W.2d at 724. This language is directory and does not require the action taken at such meeting be voided; however, it does require the body to reveal in some manner in open session the action taken in the closed meeting.

III. *Authority of attorney.* The City claims its attorney either lacked authority to settle or exceeded his authority by agreeing to a final settlement. The City primarily challenges the factual basis for the trial court's findings that McDonald was provided actual and apparent authority from the Council to settle the case, insisting the authorization was limited to negotiation of a proposed settlement which had to be returned to the Council for final approval or rejection. In our de novo review we limit review to the actual authority provided McDonald and need not discuss issues concerning apparent authority.

The pressing question concerns the authority of an attorney. The relationship, although fiduciary, is predicated on the doctrine of principal and agent. *See Woodruff & Son v. Rhoton,* 251 Iowa 550, 555, 101 N.W.2d 720, 723–24 (1960); 7 Am. Jur.2d *Attorneys at Law* § 119 (1980). While an attorney is presumed to act with authority, this presumption is not conclusive and may be rebutted. *Dragstra v.*

*Northwestern State Bank,* 192 N.W.2d 786, 790 (Iowa 1971). An attorney cannot settle or compromise a case without authority. *Id.* at 791 (citations omitted.) However, a settlement made with authority is binding on the client. Iowa Code section 610.16(2) (1983); *Tallmon v. Tallmon,* 166 Iowa 370, 379, 147 N.W. 746, 749 (1914). Since an attorney acts in the position of an agent, agency principles guide our determination of authority.

■■■■■ A fundamental principle of agency law is that whatever an agent does, within the scope of his actual authority, binds his principal. *Grismore v. Consolidated Products Co.,* 232 Iowa 328, 335, 5 N.W.2d 646, 651 (1942); 3 Am.Jur.2d *Agency* § 261 (1962); *see* Restatement (Second) of Agency §§ 144, 145 (1958). Actual authority to act is created when a principal intentionally confers authority on the agent either by writing or through other conduct which, reasonably interpreted, allows the agent to believe that he has the power to act. Restatement (Second) of *Agency* § 26; 3 Am.Jur.2d *Agency* § 69. Actual authority includes both express and implied authority. *Newberry v. Barth, Inc.,* 252 N.W.2d 711, 714 (Iowa 1977); *Grismore,* 232 Iowa at 335, 5 N.W.2d at 651. Express authority is derived from specific instructions by the principal in setting out duties, *Newberry,* 252 N.W.2d at 714, while implied authority is actual authority circumstantially proved, *Grismore,* 232 Iowa at 335, 5 N.W.2d at 651.

The settlement negotiations in the present case commenced in earnest when the employee's attorney wrote McDonald outlining his claim. If the employee recovered total disability his attorney projected that with his life expectancy he could recover benefits of $421,122. Suggesting this amount had a commuted value of $215,785, the employee's attorney offered to compromise this figure plus the employee fringe benefits of accrued sick leave, holiday pay and vacation pay for payment of $186,017. McDonald supplied the City Attorney with this letter and suggested different courses of action including settle-

ment. If the City decided that settlement was advisable, McDonald requested that he "be given authority to the sum of $150,000 to negotiate with Attorney Carlin." The City Council was provided this correspondence, and the meeting which is the focal point of this dispute was set up.

The City divides this issue into two basic claims. It construes the evidence to show no factual basis for McDonald's authority to make a final settlement and asserts that the $150,000 settlement exceeds the claimed $150,000 authority because of the provision for group health insurance and the agreement to terminate sick leave benefits on approval of the settlement. The City also claims that it should be reimbursed or given credit for approximately $30,000 of paid sick pay. Thus, the settlement exceeds the authorized $150,000.

The trial court made lengthy findings of fact best summarized by the following statement by the trial court:

> We are fortunate to have a verbatim transcript of what occurred at the closed council meeting held March 1, 1983. McDonald requested, based on his evaluation of the case, that he be given authority to settle for up to $150,000. The matter of whether to give him such authority or whether to continue with the defense of the case was thoroughly discussed. On two separate occasions, by Corporation Counsel Abshier and the Mayor (who is also an attorney), during the session and in the presence of Attorney McDonald clear statements were made that the Council would be "bound" to stand behind the settlement if McDonald negotiated one. There is a total absence of any discussion that such settlement of the workers' compensation case should also give credit to the City for sick leave already paid to the Plaintiff. Notwithstanding the opinion expressed by council members at that closed session meeting that this case was just like labor negotiations, meaning, the Court assumes, that they expected McDonald to come back with a "figure" for the Council's consideration, the trial

record is clear that McDonald had never done labor negotiations for the City, and could not, therefore, be expected to know what the council members meant by saying that the negotiations for settlement with the Plaintiff were just like labor negotiations. The communication clearly made by the Council to Attorney McDonald was that he had settlement authority not to exceed $150,000. The only condition placed on that authority was that McDonald make it clear to Plaintiff's attorney that the City did not have the money presently, and the settlement would therefore require payments in installments. The Court is persuaded that a reasonable person in the same position as Attorney McDonald would be justified in believing that he had been given actual settlement authority in the specific amount of not to exceed $150,000, solely conditioned upon the installment payment understanding.

Upon de novo review of the facts we also find that the council conferred actual authority upon McDonald to settle the case for a sum not more than $150,000 with conditions on when payment was to be made. We find that no restriction was placed on this amount for reimbursement or credit for paid or sick leave. McDonald acted within his authority in making the oral settlement for $150,000. We agree with the trial court finding that the later addition concerning group insurance was beyond McDonald's authority and must be deleted from the settlement agreement.

IV. *City's right to reconsider or rescind.* The City asserts that it has the power to reconsider or rescind prior acts and votes, but cites no Iowa statute or case supporting this proposition. It relies upon general statements found in 4 E. McQuillin, *The Law of Municipal Corporations* (3rd ed.), sections 13.48 and 13.49, that the legislative body of a corporation, like all legislative bodies, may reconsider and redo until a final vote is taken and may rescind action. Cases from other jurisdictions in which a vote to approve claims later was rescinded validly have also been cited to support the

City's position. We note that section 13.49 of *The Law of Municipal Corporations* places conditions on the recission so "vested rights are not violated." We hold the City cannot undo a settlement once its terms have been finalized.

The City indisputably has the power to enter contracts compromising litigation involving workers' compensation claims. We conclude the facts of the present case are distinguishable from those situations in which a claim has been made against the City and the City first resolves to pay it, but later reconsiders and denies the claim. We recognize that a municipal body has the right to reconsider most of its legislative decisions. Thus, we consider and limit our holding to the facts of this case: a workers' compensation claim was in litigation before the agency which had the jurisdiction and authority to decide the claim, subject to appeal, and the City made an offer of settlement that was accepted.

An oral agreement to enter into a written contract, the terms of which are agreed upon, is as valid and obligatory as the contract would be if executed; and it is enforceable by the equitable action of specific performance. *Carter v. Bair,* 201 Iowa 788, 790, 208 N.W. 283, 284 (1926); 17 C.J.S. *Contracts* § 49 (1963). Likewise, an oral agreement to settle litigation is binding. *Cunningham v. Iowa-Illinois Gas & Electric Co.,* 243 Iowa 1377, 1381, 55 N.W.2d 552, 554–55 (1952). Thus, an enforceable agreement was entered into when the attorneys arrived at an oral settlement with agreed upon terms.

The City may not redo or change the terms of the settlement by subsequent resolution. *See Duncombe v. City of Fort Dodge,* 38 Iowa 281, 282 (Iowa 1874). In *Duncombe* the city by resolution authorized grading the public square under the direction of a councilman, but after plaintiff nearly completed the work, the council adopted a resolution limiting the amount to be expended to $150, a sum less than the amount already incurred. Similar to the City's position here, Fort Dodge claimed that "plaintiff's contract with the city is to

be controlled by the resolution last adopted," and the contract was verbal and not adopted in the manner of the then existing statute. *Id.* This contention was rejected. Referring to the first resolution the court stated, "the resolution was an expression of the will of the city." *Id.* Our court held that the city must honor the first resolution authorizing the work. *Id.* at 283. Although these principles were announced over a century ago, we find them still valid. Once the city has authorized settlement of the litigation and a bargain has been struck within that authority, the City may not by later resolution rescind or redo its earlier action. When the contract is made the parties acquire vested rights.

**V.** *Written agreement approved by agency as a binding condition precedent to specific performance.* In the City's last two issues it raised questions concerning the appropriateness of specific performance of an oral settlement agreement which needs approval of the Industrial Commissioner. Iowa Code section 85.35 in pertinent part provides: "The parties to a contested case ... may enter into a settlement of any claim arising under this chapter ... providing for final disposition of the claim.... The settlement shall be in writing and submitted to the industrial commissioner for approval." The City maintains this agreement must be in writing and signed by the parties before it becomes binding on the parties. Further, it claims approval by the Industrial Commissioner is a condition precedent to the trial court's decision that the plaintiff should have "specific performance of the oral agreement to settle." We find no merit in these claims.

Initially, we do not interpret the district court order and decree to require the City to perform the contract and pay the agreed settlement, bypassing section 85.35. The employee's petition alleged the City refused to comply with the oral agreement to settle and prayed for the relief of specific performance of the contract. The district court order and decree fairly can be read to provide for specific performance of that agreement. The City is required to sign the agreement as amended, deleting the provision for health insurance participation; then the matter must be submitted to the Industrial Commissioner for approval. Approval of the agreement by the Commissioner is not a condition precedent to enforcement of the oral agreement.

As we indicated in division IV, an oral agreement of settlement that is to be reduced to writing is enforceable if the terms are settled. Consequently, the preliminary oral agreement is binding upon the parties. The decree which enforces the oral agreement requires the parties to execute their agreement so it may be tendered to the Commissioner for approval.

**VI.** *Plaintiff's claim for interest.* The trial court granted plaintiff's request for specific performance, but awarded no interest. Further, plaintiff's motion for enlargement, requesting interest at the rate of 10 percent from the commencement of the action pursuant to Iowa Code section 535.3, was denied. On appeal plaintiff maintains, and we agree, that section 535.3 which provides for interest on money judgments is applicable to equity actions as well as those at law. *Arnold v. Arnold,* 258 Iowa 850, 854, 140 N.W.2d 874, 877 (1966).

Section 535.3 provides in pertinent part: "Interest shall be allowed on all money due on judgments and decrees of courts at the rate of ten per cent per year...." The plaintiff urges that we should construe the statutory language "money due" to include the decree enforcing the agreement to settle for $150,000. In support, he cites a recent statutory change providing for interest from the commencement of an action, 1980 Iowa Acts ch. 1170, § 1, and concludes that the obvious purpose of the change was to prevent persons obligated to pay money to another from profiting through delays incident to litigation. Although we agree that this is one of the primary purposes of the legislative change, we cannot agree that the allowance of interest would be proper in this case.

Even if we assume that the statutory term "money due on judgment and decree" is ambiguous, requiring the application of principles of statutory construction, plaintiff would not be aided. Keeping the purpose of the statute in mind, a liberal interpretation might justify awarding interest on a judgment that was equivalent to a money judgment. The instant judgment is not the equivalent of a money judgment. The decree only calls for specific performance of the contract to make a written contract settling a workers' compensation claim. Before this contract would become the equivalent of a money judgment, another condition must occur—the approval of the Industrial Commissioner pursuant to section 85.35. We cannot state with a degree of certainty that this will occur. Thus, we conclude that even if we liberally construe section 535.3, interest on this judgment and decree is not proper.

AFFIRMED.