James W. TAUSZ and Tausz Financial Corporation, Appellants,

v.

CLARION–GOLDFIELD COMMUNITY SCHOOL DISTRICT, Appellee.

No. 96–785.

Supreme Court of Iowa.

Sept. 17, 1997.

ing an easement in an unsuccessful attempt to retroactively make condemnation of parcel E necessary.

Timothy McCarthy II of Cook, Gotsdiner, McEnroe & McCarthy, Des Moines, for appellants.

Stephen G. Kersten of Kersten & Carlson, Fort Dodge, for appellee.

CARTER, Justice.

James W. Tausz and Tausz Financial Corporation, the plaintiffs in this defamation action against the Clarion–Goldfield Community School District, appeal from an adverse judgment following jury trial. The only contention that they advance for reversal concerns a ruling on their pretrial discovery motion seeking access to a transcript or tape recording of a closed session of the school district's board of directors in which the allegedly defamatory statements were prepared for public release. That session had been called to confer with the district's attorney with respect to an offer of settlement of litigation in which the district was involved. The district court denied plaintiffs' request to review the tape and transcript of this closed session based on attorney-client privilege. After reviewing the record and considering the arguments of the parties, we affirm the judgment of the district court.

The present defamation action is based on a public statement by the school district in connection with its acceptance of an offer to settle other litigation in which it was the plaintiff and Tausz Financial Corporation was one of the defendants. That action concerned charges by the school district that a certain health insurance plan for the district's employees was being improperly administered. Few details of that claim are disclosed in the record now before us.

Tausz Financial Corporation was the local agency through which the district had secured the health insurance plan in question. American Medical Security, Inc. (AMS), the other defendant in the earlier litigation, was the benefit provider. The school district's action against Tausz Financial Corporation and AMS was ultimately bifurcated as the result of an arbitration clause in the contract with the benefit provider. As a result, the district's claims against AMS proceeded to arbitration, and its claims against Tausz Financial Corporation remained pending in the district court.

The transaction on which the present defamation action is based occurred a few days prior to the arbitration hearing on the district's claims against AMS. At that time, AMS offered the sum of $116,000 in full settlement of all claims that the district was pursuing against it and against Tausz Financial Corporation. Acting in accordance with Iowa Code section 21.5(1)(c) (1995), the district's board of directors convened in closed session to consider the offer from AMS. Also present at the closed session were the district's attorney, the district's superintendent, and a certified public accountant who had been retained to advise the district concern-

ing the financial implications of the offer with respect to the perceived inadequacies of the health insurance plan.

The closed session of the board produced a consensus that the AMS offer should be accepted, and immediately after this session was concluded, the board, in open session, passed the following resolution:

> Motion by Bowman, second by Petersen, to accept a settlement of $116,000 from American Medical Security (AMS) ... of which $39,054.20 is attributable to AMS and the remainder attributable to James Tausz based on the financial data that has been furnished to the board. Motion carried 6–0.

Plaintiffs contend that they were defamed by this resolution because it falsely implies that they had acted improperly in their business dealings with the school district and caused the district to sustain financial loss. That innuendo, plaintiffs urge, is not true and has caused damage to both their personal reputations and business reputations.

The school district's resistance to granting plaintiffs access to the tape recording or transcript of the closed session of the board was based on both the language in Iowa Code section 21.5(4) that states "[t]he detailed minutes and tape recording of a closed session shall be sealed," and the attorney-client privilege conferred by Iowa Code section 622.10. The district court concluded that this court's decision in *Dillon v. City of Davenport,* 366 N.W.2d 918 (Iowa 1985), foreclosed the district's right to maintain the confidence of the closed session under section 21.5(4). On the district's attorney-client-privilege claim, however, the court found that the privilege did apply and precluded plaintiffs from gaining access to the record of the closed session of the board with the district's attorney.

■ We agree with the district court that the sealing of the record of a closed session pursuant to section 21.5(4) only serves to deny access to inspection by members of the general public. A special need for relevant evidence by a party engaged in litigation with the public agency and seeking discovery under Iowa Rule of Civil Procedure 122(a) may be accommodated by court-ordered disclosure to that party of relevant portions of the otherwise confidential record. *Dillon,* 366 N.W.2d at 921–22.[1]

■ Plaintiffs maintain that the attorney-client privilege is not available to public agencies or public officials and that in any event the presence of the certified public accountant during attorney-client discussions destroyed any privilege that might otherwise exist. With respect to the second contention, we are satisfied that the accountant's presence did not destroy the privilege if one existed. In *State v. Deases,* 518 N.W.2d 784, 788 (Iowa 1994), we held that the presence of a third person necessary for the providing of the professional service did not destroy a physician-patient privilege. We believe the same principle should prevail with respect to the attorney-client privilege. Other courts have determined that, because the presence of an accountant or financial advisor can be essential for the rendition of a legal opinion, the presence of such persons at attorney-client conferences does not destroy privilege otherwise existing. *See United States v. Adlman,* 68 F.3d 1495, 1499–1500 (2d Cir. 1995); *In re Grand Jury Proceedings Under Seal v. United States,* 947 F.2d 1188, 1190–91 (5th Cir.1991); *United States v. Kovel,* 296 F.2d 918, 920–23 (2d Cir.1961).

■ Although it appears that we have not previously considered the attorney-client privilege in that context, a respectable body of authority supports the proposition that a governmental body may be a client for purposes of invoking the privilege. The Uniform Rules of Evidence define a client within the lawyer-client privilege as

> a person, including a public officer, corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view

---

1. The only language in the public meetings statutes pertaining to unsealing the transcript of closed sessions held pursuant to § 21.5 is found in § 21.5(4). This language only pertains to enforcement proceedings brought pursuant to § 21.6 and does not govern discovery requests under Iowa Rule of Civil Procedure 122(a).

to obtaining professional legal services from the lawyer.

Unif. R. Evid. 502(a)(1) (amended 1986), 13A U.L.A. 518–20 (1994).[2] The term "client" was similarly defined in proposed Federal Rule of Evidence 503 (reprinted in 56 F.R.D. 183, 235 (1972)), promulgated by the Supreme Court in 1972 but not adopted by the Congress. Restatement (Third) of the Law Governing Lawyers section 124 (approved by the American Law Institute on May 28, 1966) also recognizes that the attorney-client privilege extends to a communication of a governmental organization.

With respect to the conflict between the attorney-client privilege and public meeting laws, the California courts have recognized that public agencies may assert an attorney-client privilege for closed sessions with attorneys. *Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors*, 263 Cal. App.2d 41, 69 Cal.Rptr. 480 (1968). In so doing, however, the court indicated:

> The two enactments [the open meetings law and the statutory attorney-client privilege] are capable of concurrent operation if the lawyer-client privilege is not overblown beyond its true dimensions.... Public board members, sworn to uphold the law, may not arbitrarily or unnecessarily inflate confidentiality for purposes of deflating the spread of the public meeting law. Neither the attorney's presence nor the happenstance of some kind of lawsuit may serve as a pretext for secret consultations whose revelation will not injure the public interest.

*Id.* 69 Cal.Rptr. at 491.

The Alaska Supreme Court in *Cool Homes, Inc. v. Fairbanks North Star Borough*, 860 P.2d 1248 (Alaska 1993), has also recognized that the privilege should not be applied blindly. That court has stated:

> The principles of confidentiality and the lawyer-public body relationship should not prevail over the principles of open meetings unless there is some recognized purpose in keeping the meeting confidential.... The privilege thus should be ap-

plied only when the revelation of the communication will injure the public interest or there is some other recognized purpose in keeping the communication confidential.

*Cool Homes, Inc.*, 860 P.2d at 1262.

The Minnesota Supreme Court has concluded that the extent that the privilege may be claimed by public agencies or public officers subject to open meeting laws must be determined on a case-by-case basis. *Channel 10, Inc. v. Independent Sch. Dist.*, 298 Minn. 306, 323, 215 N.W.2d 814, 826 (1974). In another case, that court has suggested that the privilege ordinarily should not be extended to communications requesting legal advice concerning the agency's statutory duties even when that issue has been made the subject of litigation. *Minneapolis Star & Tribune Co. v. Housing & Redevelopment Auth.*, 246 N.W.2d 448, 454 (Minn.1976). On the other hand, the Minnesota court has concluded that the privilege ordinarily should extend to conferences with counsel concerning pending or proposed litigation in which the issue is not the propriety of the public agency's action but rather the validity of a claim by the agency against a third party. *Id.; see also In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 917 n. 7 (8th Cir.1997) (discussing privilege vis-à-vis private litigants who are adverse to the position of the government agency).

After reviewing these authorities, we deem it appropriate to recognize an attorney-client privilege with respect to some communications between public agencies or public officials and their lawyers. In so concluding, we share the view of the Alaska and California courts that the privilege must be carefully circumscribed so as to prevent an abuse of utilizing closed sessions when public sessions are required by statute. We also agree with the Minnesota court that such determinations must be made on a case-by-case basis.

 As did the district court, we have reviewed the transcript of the closed session of the board *in camera.* Most of the collo-

---

**2.** Rule 502(d)(6) of the Uniform Rules of Evidence provides that privileged communications by public officers or agencies are limited to pending actions or investigations in which disclosure would seriously damage the public body's ability to proceed in the public's best interest.

quy that took place in the closed session concerned a request by the school district for legal advice concerning the district's pending litigation. We conclude that those discussions were subject to an attorney-client privilege. In addition to the discussion about the merits of the pending litigation, there was also some very brief discussion during the closed session concerning the subject matter of the resolution to be offered in open session. We are less certain that this colloquy was privileged. It is sufficiently intertwined with privileged discussions, however, that release of a redacted transcript would be difficult. Notwithstanding the possibility that some redaction of the transcript might have been possible so as to have allowed plaintiffs to view the transcript of discussions concerning the proposed resolution without destroying the privilege with respect to other conversations, we are satisfied that this circumstance provides no basis for reversal of the judgment. Nor do we deem it appropriate to order the release of a redacted transcript at this time.

■ An appellate court is entitled to make a hindsight determination of the issues of necessity and prejudice based on what actually occurred at trial. In the present case, this determination on our part is hampered by the fact that appellants have elected not to provide us with a transcript of any of the evidence offered at trial with respect to the school district's explanation of the challenged resolution. In order to provide a basis for reversal of a judgment, an appellant must provide the court with enough of the record of the trial that it may be determined whether an allegedly erroneous ruling was prejudicial. *Forrest v. Sovereign Camp*, 220 Iowa 478, 486, 261 N.W. 802, 807 (1935) (court must be able to determine from record not only whether a particular ruling was erroneous but also whether it was prejudicial). Appellants have failed to do this in the present case and must suffer the consequences. Based on the record that is before us, including our *in camera* review of the transcript of the closed session, we are unable to conclude that the denial of plaintiffs' motion to disclose the contents of the closed meeting was sufficiently prejudicial to warrant reversal.

The transcript of the closed session of the board reveals that the reason for the resolution was substantially as stated therein. The board had concluded based on data presented that the most it could recover from AMS in the arbitration proceeding was $39,054.20. The purpose of allocating the remainder of the $116,000 to a potential payment source other than AMS was for purposes of weighing that sum against the potential of recovering more from the other payment source.

Although there is a certain amount of mystery concerning why the resolution recites an allocation of the remainder of the settlement to James Tausz, individually, rather than Tausz Financial Corporation, which was the entity actually named in the litigation, the transcript of the closed session sheds no light on this discrepancy. Plaintiff James Tausz contends that the allocation of a portion of the settlement to a nonparty to the litigation is defamatory. Within the context of a defamation action, this is not necessarily the case. The identity of interest between James Tausz and the corporation he controlled would permit the jury to find that, notwithstanding this seeming inaccuracy, the resolution of the board was nonetheless an utterance of substantial truth. *Behr v. Meredith Corp.*, 414 N.W.2d 339, 342 (Iowa 1987) (test of substantial truth is whether plaintiff would have been exposed to any more opprobrium had the statement been entirely accurate). This issue depended on the jury's characterization of the words utilized in the public resolution of the board rather than on matters discussed during the closed session.

The action of the district court in denying plaintiffs access to the closed session did not provide a legal impediment to plaintiffs inquiring directly of the board members concerning the reason for and meaning of the challenged resolution. The extent to which such inquiry was made and the results thereof have not been made to appear in the record submitted to us. Plaintiffs have elected to base their appeal entirely on the rulings made with respect to the pretrial discovery proceedings. Because we are unable to conclude that those rulings sufficiently preju-

diced plaintiffs to warrant reversal, we affirm the judgment of the district court.

**AFFIRMED.**

All justices concur except TERNUS, J., who takes no part.