**IN THE COURT OF APPEALS OF IOWA**

No. 15-0981
Filed July 27, 2016

**IN THE MATTER OF THE ESTATE OF
ATELLIA J. KINZENBAW, Deceased.**

**DOYLE KINZENBAW,**
        Intervenor-Appellant.
_____

        Appeal from the Iowa District Court for Iowa County, Paul D. Miller, Judge.


        Doyle Kinzenbaw appeals the enforcement of a settlement agreement.

**AFFIRMED.**



        Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

        John C. Wagner of John C. Wagner Law Offices, P.C., Amana, for

appellee.



        Considered by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

Doyle Kinzenbaw appeals the district court's order enforcing a settlement agreement between the beneficiaries of the Estate of Atellia J. Kinzenbaw (The Estate). Doyle claims his attorney did not have authority to accept the settlement agreement. We affirm the district court's ruling.

We adopt the district court's findings of fact:

> Atellia Kinzenbaw died testate leaving one-sixth shares of the family farm to six of her children. Doyle was one of the six children receiving a share of the family farm. The Final Report was approved and the Estate closed on August 4, 2014. There appears to be a history of bad blood/bad relationship between Doyle and his other five siblings. This included some litigation in the estate file and also a [forced entry and detainer] action to remove Doyle from the family farm. . . .
>
> During some of the intra-family disputes, Doyle was represented by attorney Eric Tindal. At some point there was discussion between Doyle and his other five siblings about the five siblings purchasing (through an LLC) Doyle's one-sixth interest in the farm. Attorney John Wagner represented the other five siblings in this process/negotiation.
>
> A series of emails between attorneys Wagner and Tindal . . . establish the following:
> a. August 14, 2014, email from Tindal (Doyle's attorney) to Wagner indicating that Doyle is perfectly willing to have his interest in the farm bought out;
> b. August 15, 2014, email from Wagner to Tindal indicating that the siblings are going to meet to discuss whether interest exists to buy Doyle out;
> c. November 7, 2014, email from Wagner to Tindal indicating that Wagner had attached a proposed Settlement Agreement based on Doyle's acceptance of the siblings $233,000 settlement offer;
> d. November 7, 2014, email from Tindal to Wagner indicating he (Tindal) would take a look at it and get back to Wagner;
> e. November 9, 2014, email from Wagner to Tindal asking for progress update;
> f. November 9, 2014, email from Tindal to Wagner indicating that he (Tindal) had made two minor changes on the Settlement Agreement;
> g. November 9, 2014, email response from Wagner indicating the changes are agreeable;

h.November 9, 2014, email from Tindal indicating that "Doyle's coming in to sign in the next hour";
i. November 9, 2014, email from Tindal to Wagner that starts "This is the damnedest thing John" and continues to state that Doyle wants to participate in the LLC as a minor member and subject to its direction and decision as a minor member;
j. November 9, 2014, email from Tindal to Wagner indicating that Tindal would accept service if Wagner elects to attempt enforcing the settlement.

In May 2014, the Estate filed an application to enforce the agreement claiming the parties had reached a final and complete settlement. It also claimed the parties' attorneys had the authority to enter into a settlement agreement on behalf of the parties. Doyle resisted the Estate's application.

The district court held a hearing on the Estate's application in March 2015. Concerning the parties, the court made the following observations:

Attorney Tindal testified at the hearing that:
a. Doyle never had the opportunity to read the settlement agreement.
b. The content of [Tindal's] emails. . . were accurate at the time Tindal authored those emails.
c. In response to a question from Wagner concerning the content of the emails—"And you believe that you were authorized to make those offers on behalf of your client, do you not?" Tindal responded "I would generally agree that I would not make an offer without having authorization."
d. During this relevant time frame, Tindal and Wagner had numerous phone calls, some of which were probably about the subject of Doyle's buyout.
e. Tindal had a phone conversation with Doyle concerning the $233,000 buyout offer from the siblings. Doyle had concerns that that figure was not fair market value. Tindal explained to him about the length of time litigation could go on and some of the potential problems (attorney fees, length of litigation, cost of partitioning the real estate) including the fact that farmland values were starting to drop and could continue to drop if the litigation dragged on.
f. At the end of the phone conversation, Tindal felt that Doyle had authorized him to accept the $233,000 offer, and Tindal then conveyed this to Wagner.

g. Under cross-examination, Tindal *felt* it was his general practice, and also the case in this situation, that any final acceptance was subject to Doyle's approval of a definitive document.

Doyle testified at the hearing that:

a. He has extensive hearing loss and is hard of hearing. He does not have a computer and does not email and, therefore, never received any of the emails between Tindal and Wagner.

b. He gave Tindal authorization to try and negotiate a buyout of his interest in the family farm but never gave him authorization to settle or accept an offer.

c. He would never agree to the $233,000 buyout price since he felt under current farmland values that his portion of the family farm is worth at least $750,000 to $1,000,000.

Executor Denise Kaestner credibly testified to the dollar amount reductions the siblings took into account in formulating their buyout offer to Doyle as follows:

a. $155,000 mortgage against the farm (one-sixth share equals approximately $26,000).

b. Possible environmental clean-up problems and expense caused by Doyle. (Doyle disputes this allegation). Estimated clean-up cost was $40,000.

c. Doyle lived on the farm property for approximately seven years without paying rent and also had livestock and horses there. Rent at $1000 per month equals $84,000 in unpaid rent.

d. $70,000 spent in legal fees by Atellia when she was sued over a motor vehicle accident caused by Doyle.

e. These amounts (including one-sixth share of the mortgage) total $220,000.

The court found the parties entered into a valid settlement agreement and the parties' attorneys had authority to enter into the agreement. Doyle filed a motion to enlarge the findings claiming enforcement of the settlement agreement is prohibited by the statute of frauds provision in Iowa Code section 622.32(2) (2013). The Estate resisted. The district court denied the motion finding Doyle had not preserved error on his statute of frauds claim. Doyle now appeals.

"[T]he decision of the trial court has the effect of a jury verdict, and our review is limited to claims of error. The findings made by the trial court are binding [on appeal] if supported by substantial evidence." *Wende v. Orv Rocker*

*Ford Lincoln Mercury, Inc.*, 530 N.W.2d 92, 95 (Iowa Ct. App. 1995) (citations omitted).

Doyle claims the district court's finding his attorney had authority to accept the settlement agreement was not supported by substantial evidence and, thus, the court improperly enforced the settlement agreement.

An attorney has the authority to "[b]ind a client to any agreement, in respect to any proceeding within the scope of the attorney's or counselor's proper duties and powers." Iowa Code § 602.10114(2).

> An attorney's offer of settlement is generally within the scope of the attorney's litigation duties. *See Strong v. Rothamel*, 523 N.W.2d 597, 600 (Iowa Ct. App. 1994); *Starlin v. State*, 450 N.W.2d 257, 258 (Iowa Ct. App. 1989). However, an attorney cannot settle or compromise a case without authority. *Dillon v. City of Davenport*, 366 N.W.2d 918, 924 (Iowa 1985). If a settlement is made with authority, that settlement is binding on the client. *Id.*; *see* Iowa Code § 602.10114(2).
>
> An attorney is presumed to act with authority. *Dillon*, 366 N.W.2d at 923. The presumption, however, is not conclusive and may be rebutted. *Id.* The presumption is overcome only by clear and satisfactory proof. *Lonning v. Lonning*, 199 N.W.2d 60, 62 (Iowa 1972).

*Gilbride v. Trunnelle*, 620 N.W.2d 244, 251 (Iowa 2000).

In finding Doyle's attorney had the authority to accept the settlement agreement, the court noted:

> The evidence clearly establishes that: Tindal initiated and undertook discussions/negotiations with Wagner concerning the siblings buying out Doyle's interest in the farm and was authorized to do so by Doyle. Tindal was retained as an attorney by Doyle to engage in such negotiations. Tindal felt that Doyle had authorized him to accept the $233,000 offer and that Tindal conveyed this acceptance to Wagner.
>
> As stated in my Conclusions of Law, an attorney is presumed to act with authority. Based on the evidence presented and my Findings of Fact, buttressed by the presumption of authority, I FIND that attorney Tindal was authorized to accept the

sum of $233,000 from Wagner for the buyout of Doyle's interest in the family farm. Although Doyle now appears to have buyer's (or in this case seller's) remorse, he is unable to rebut the presumption of authority by clear and satisfactory evidence.

We agree with the district court and find Doyle has not proven, by clear and satisfactory evidence; he did not consent to the settlement agreement. We find substantial evidence supports the court's finding Doyle's attorney had consent to accept the settlement agreement, and we affirm.

**AFFIRMED.**