# IN THE COURT OF APPEALS OF IOWA

No. 20-1250
Filed May 12, 2021

**LARRY E. FORBES,**
    Plaintiff-Appellant,

**vs.**

**BENTON COUNTY AGRICULTURAL SOCIETY,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Benton County, Andrew B. Chappell,

Judge.

A personal injury plaintiff appeals the grant of summary judgment to the

defendant property owner on its defense of compromise and settlement.

**AFFIRMED.**

Jeffrey L. Clark of Thomas & Clark, LLC, Anamosa, for appellant.

Natalie Williams Burris of Swisher & Cohrt, P.L.C., Waterloo, for appellee.

Considered by Bower, C.J., Tabor, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**TABOR, Judge.**

Larry Forbes sued the Benton County Agricultural Society[1] after suffering a serious head injury from a slip and fall at the fairgrounds. Not realizing Medicare made conditional payments of $25,482 toward his medical expenses, Forbes negotiated to settle his suit with the Ag. Society for $12,500. The district court enforced that settlement on a motion for summary judgment. Forbes now argues the agreement was unenforceable because the parties failed to reach a "meeting of the minds." In the alternative, he contends any agreement was voidable because it resulted from a mutual mistake. Because settlement agreements are essentially contracts and the district court properly applied contract law, we affirm.

## I. Facts and Prior Proceedings

A brief rain dampened the Boomtown fireworks at the Benton County fairgrounds in August 2017. Forbes alleged in his petition that while leaving the grandstands, he slipped on a wet wooden ramp. He fell over a guardrail, landing five feet below and striking his head. That strike caused a subdural hematoma requiring emergency surgery.

Nearly two years later, he filed a negligence action.[2] The Ag. Society answered and advanced a defense of comparative fault. After the parties engaged in discovery, the district court set the matter for an August 2020 trial.

---

[1] For brevity, we will refer to the defendant as the Ag. Society.

[2] Forbes claimed the Ag. Society was remiss in two ways: (1) by "failing to provide a ramp surface that would provide traction in the event it became wet" and (b) by "failing to provide a guardrail of adequate height to prevent an adult from falling over the side of the ramp."

Meanwhile, in November 2019, counsel for the Ag. Society, Natalie Burris, contacted Forbes's counsel, Jeffrey Clark, to make a settlement offer of $10,000. Her letter stated: "Based on information you have provided to date, Mr. Forbes had an excellent recovery, and his actual medical bills totaled $2,732, for which Tricare[3] apparently had a subrogation interest." Burris added: "There is no indication that Mr. Forbes had to pay anything out-of-pocket, or that the medical providers are actually charging anything beyond the $2,732.00 paid."

Clark countered with a settlement offer of $12,500. His email said that amount would pay the Tricare lien of $2732 and Clark's attorney fees—with the rest going to Forbes. The next day, Burris responded that her client's insurance carrier agreed to pay $12,500 in return for Forbes dismissing the suit with prejudice. Along with the dismissal, Burris offered to draft a release in which Forbes would acknowledge his duty to "satisfy any subrogation interests and liens." Her email continued: "As you know, insurance companies are required by law to protect the interests of Medicare and submit information to Medicare regarding a Plaintiff before a settlement can be finalized." To that end, Burris attached an information sheet for Clark to complete and return so that the insurer could perform a "Medicare sweep." Burris also highlighted the need for Clark to request a "final CMS letter, showing the amount owed, if any, in reimbursement to Medicare."[4]

---

[3] Tricare is the defense department's health care program available to Forbes, apparently through his service in the Navy.

[4] CMS is the acronym for the Centers for Medicare and Medicaid Services, a federal agency within the U.S. Department of Health and Human Services. *See Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 252 n.6 (Iowa 2012).

A few days later, Clark responded with the information sheet and informed Burris that the check should be payable to his firm. He stated he would "get rolling on the clearance letter" from CMS.

When Burris had not heard back from Clark by early January 2020, she again emailed: "Any luck getting a clearance letter from CMS? My client's insurance carrier completed the Medicare 'sweep' which showed your client is Medicare eligible. As such, the carrier will need a final lien letter from CMS before the settlement check can be issued."

About three weeks later, Clark responded: "Medicare is now showing that there were conditional payments made on this injury. I certainly was not aware of that and they have not provided a letter at this point. I thought the Navy took care of his medicals. I will have to keep you posted." An exhibit from CMS showed the amount of conditional payments was $25,482. After finding that out, Clark sent Burris this email: "[S]o the Navy was cheap but Medicare kicked in a bunch. I apologize for the surprise. I assume at this point you would want to litigate comparative fault and I will see what Medicare might settle for."

But the Ag. Society did not want to litigate comparative fault. Rather, it moved to amend its answer to add the affirmative defense of compromise and settlement. The Ag. Society also moved for summary judgment and asked the district court to enforce its settlement agreement with Forbes.

Forbes resisted. He argued the settlement agreement was void, or at least voidable, based on mutual mistake. Or, in the alternative, there was no "meeting of the minds" before Forbes obtained a clearance letter from CMS. Forbes cited

the Burris email stating that a final lien letter from CMS was necessary before the insurer could issue the settlement check.

In response, the Ag. Society contended any mistake was "unilateral." In other words, Forbes and Clark could have found out about the Medicare payments "before presenting their settlement demand, but did not."

The district court granted summary judgment for the Ag. Society, holding:

> Contrary to [Forbes's] argument, the Court finds that there was a meeting of the minds in negotiating and acceptance of the settlement agreement.
>      The Court also finds that, to the extent any mistake was made regarding a basic assumption on which the contract was based, the contract is not voidable because [Forbes] bore the risk of that mistake.

In line with the summary-judgment ruling, the court found that the settlement agreement between Forbes and the Ag. Society was binding and should be enforced. Forbes appeals those rulings.

## II. Scope and Standard of Review

The question is not whether a district court has authority to enforce a settlement agreement in a pending case—it does. *Gilbride v. Trunnelle*, 620 N.W.2d 244, 249 (Iowa 2000). Instead, the question is whether summary judgment was the proper remedy. If there are genuine issues of material fact surrounding the settlement, the issue is not appropriate for summary judgment and must be resolved by a fact finder. *Wende v. Orv Rocker Ford Lincoln Mercury, Inc.*, 530 N.W.2d 92, 94 (Iowa Ct. App. 1995).

We review summary judgment for correction of legal error. *Hollingshead v. DC Misfits, LLC*, 937 N.W.2d 616, 618 (Iowa 2020). As the moving party, the Ag. Society had the burden to show there was no genuine issue of material fact. *See*

*id.* And we review the facts in the light most favorable to Forbes and will make every legitimate inference in his favor. *See id.*

### III. Analysis

Forbes raises two issues. First, he claims a factual dispute existed over his intent "to indemnify the Ag. Society as to conditional payments by Medicare." This first issue reprises his position that the settlement agreement did not reflect a "meeting of the minds." Second, Forbes contends the district court should have found that mutual mistake precluded enforcing the agreement. He criticizes the court for finding that either he assumed the risk of the mistake by acting on incomplete information or it was reasonable to allocate the risk to him.

### A. Meeting of the Minds

To address Forbes's first issue, we start with the law on settlement agreements. "Settlement agreements are essentially contracts, and general principles of contract law apply to their creation and interpretation." *Sierra Club v. Wayne Weber LLC*, 689 N.W.2d 696, 702 (Iowa 2004). "The intent of the parties controls the interpretation issues." *Id.* In most cases, the parties need not reduce their settlement agreement to a writing before it is enforceable. *Wende*, 530 N.W.2d at 95. Rather, for the agreement to bind the parties, it is enough if they "manifest their mutual assent to the terms sought to be enforced." *Sierra Club*, 689 N.W.2d at 702. We find mutual assent from "objective evidence that there has

been a meeting of the minds."[5] *Est. of Cox v. Dunakey & Klatt, P.C.*, 893 N.W.2d 295, 303 (Iowa 2017).

Here, the parties exchanged emails revealing mutual assent to a $12,500 settlement. The Ag. Society started with a $10,000 offer based on the medical information received from Forbes. Attorney Clark responded with the $12,500 counteroffer. Attorney Burris replied that her client's insurance carrier agreed to pay that amount. Her reply also outlined the federal requirements to provide information to Medicare. Clark emailed back with directions for paying the settlement amount to his firm and his agreement to secure the "clearance letter" for Medicare. As the district court found, these were the "clear terms of the parties' agreement." We agree that the parties' exchange left no genuine issue of material fact in dispute.

Yet Forbes argues that the parties did not reach mutual assent on two material terms: (1) the existence of Medicare's $25,482 claim against the settlement proceeds and (2) the Ag. Society's condition that he agree to indemnify it against any such claim. Forbes asserts that the Ag. Society introduced those terms in its "purported acceptance" of his counteroffer. And he contends that his attorney's response that he would "get rolling" on the clearance letter shows the settlement agreement was not final.

---

[5] We recognize that some commentators consider this phrase "quaintly archaic." *See* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 571 (3d ed. 2011) (quoting Grant Gilmore's The Death of Contract 43 (1974)). In fact, Garner calls "meeting of the minds" outmoded as a matter of substantive law because it "denotes a subjective rather than objective theory of contract." *Id.* But our case law links a meeting of the minds to "objective evidence and not hidden subjective intent." *See Schaer v. Webster Cnty.*, 644 N.W.2d 327, 338 (Iowa 2002). So we do not shy away from the phrase.

Pushing back, the Ag. Society insists Forbes accepted those terms when his counsel replied with instructions for depositing the settlement check and a completed questionnaire on Forbes's Medicare information. The Ag. Society has the more compelling argument. Basic contract law governs. Forbes offered to settle his lawsuit for $12,500. The Ag. Society accepted. "Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Heartland Express, Inc. v. Terry*, 631 N.W.2d 260, 270 (Iowa 2001) (quoting Restatement (Second) of Contracts § 50). Any additional terms in Burris's email accepting Forbes's counteroffer drew no objection from Clark. Rather, Clark followed Burris's instructions on additional information to be provided on the Medicare sweep and the clearance letter and instructed Burris where to send the check. Clark did not suggest that his own uncertainty about his client's Medicare eligibility or the Ag. Society's request for additional information changed the contours of the settlement agreement.

On top of that, the Ag. Society contends those terms were legal mandates:

> Ag. Society's request for a completed Medicare information questionnaire so its liability insurer could check to see if [Forbes] was Medicare eligible, and request for a final CMS letter, were statutory requirements imposed on its liability insurer pursuant to 42 U.S.C. [section] 1395y(b)(8). As for the satisfaction of "any subrogation interests and liens" from the settlement proceeds, the obligation of an individual who benefited from conditional payments by Medicare to reimburse Medicare is federally mandated. 42 C.F.R. [section] 411.24 requires the "beneficiary" to reimburse Medicare when he receives a "primary payment" from a "primary payer" such as a liability insurer. [Forbes] would have been obligated to reimburse Medicare out of the settlement proceeds regardless of any provision in the agreement with Ag. Society to do so.

Like the district court, we see no material factual dispute to be litigated on the agreement.[6]

## B. Mutual Mistake

In a second swipe at the grant of summary judgment, Forbes urges the settlement agreement was voidable because it rested on a faulty assumption by both parties. In his view, "[w]hen the underlying assumption that the Navy's $2,732 payment was the only lien on the $12,500 proceeds was proven false, a mutual mistake had been discovered."

True, a mutual mistake allows the party adversely affected to argue that the court should annul the contract based on the foundational misunderstanding. *See Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 150 (Iowa 2001); *see also* Restatement (Second) Contracts § 152 (1981) ("Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake . . . ."). But exceptions exist. The party adversely

---

[6] Forbes cites *Feuling v. North Iowa Mercy Health Center*, No. 03-0464, 2004 WL 154562 (Iowa Ct. App. Jan. 28, 2004), in support of his position. In *Feuling*, our court reversed a grant of summary judgment, finding a genuine issue of material fact existed whether a provision in the settlement agreement required the patient to indemnify and hold the medical center harmless from a known Medicare claim. 2004 WL 154562, at *3. The *Feuling* decision highlighted a letter from the plaintiff's attorney questioning the indemnification clause in the draft agreement as evidence of a factual dispute. *Id.* at *2. The facts here are dissimilar. For instance, the Ag. Society knew nothing about a Medicare claim when accepting Forbes's offer. And Forbes does not point to any objection to the indemnification clause proposed by the Ag. Society in their attorneys' email exchange.

affected may bear the risk of the mistake in three instances, two of which are at play here.[7] *See* Restatement (Second) Contracts § 154(b), (c), at 402–03.

The first of those two exceptions is called "conscious ignorance." *See id.* cmt. c. Under that exception, even if Forbes did not agree to bear the risk of mistake, he was aware when he agreed to the settlement that he had limited knowledge about potential Medicare payments. And despite that uncertainty, he "undertook to perform" the bargain. *See id.* In doing so, he assumed the risk of the mistake. *See id.* We agree with the district court that Forbes had exclusive access to his medical records and the ability to investigate whether Medicare would seek a recovery claim.

On the second exception, even if Forbes were not consciously ignorant about the possibility of a Medicare recovery claim, the district court was still reasonable in assigning the risk of mistake to him. *See Pathology Consultants v. Gratton*, 343 N.W.2d 428, 438 (Iowa 1984); *see* Restatement (Second) of Contracts § 154 cmt. a. As the court noted, Forbes's fall occurred nearly two years before he sued. In that time, he had the opportunity and the burden to inquire thoroughly into the payment of his medical bills.[8] It made sense for the court to allocate the risk of any mistake to Forbes.

---

[7] A party bears the risk of a mistake when
    (a) the risk is allocated to him by agreement of the parties, or
    (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
    (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.
Restatement (Second) of Contracts § 154 (1981).
[8] If Forbes had contacted Medicare, and Medicare had provided a payment amount later determined to be in error, we may have reached a different conclusion.

The district court properly granted summary judgment to the Ag. Society on its defense of compromise and settlement.

**AFFIRMED.**