**Ronald GILBRIDE, Appellee,**

v.

**Theodore R. TRUNNELLE and Rosalie Bonavia, Appellants,**

**Mary Kahler, Donald Trunnelle, David Trunnelle and Susan Fudurich, Defendants.**

**Mary Kahler, Donald Trunnelle, David Trunnelle and Susan Fudurich, Cross–Petitioners,**

v.

**Ronald Gilbride, Theodore R. Trunnelle and Rosalie Bonavia, Cross–Defendants.**

No. 99–0358.

Supreme Court of Iowa.

Dec. 20, 2000.

Chad A. Swanson, Thomas L. Staack, and Steven K. Daniels of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellants.

Joseph J. Straub, Jr. and Eldon J. Winkel of Winkel & Straub Law Firm, Algona, for appellee.

LAVORATO, Chief Justice.

Theodore R. Trunnelle and Rosalie Bonavia appeal from a district court ruling granting Ronald Gilbride's motion for partial summary judgment to enforce a settlement in a real estate partition action. Theodore and Rosalie assert summary judgment was not proper because there was a genuine issue of material fact as to whether the attorney who negotiated the settlement was representing them at the time of the settlement. Theodore and Rosalie alternatively argue that, even if an attorney-client relationship existed, there was a genuine issue of material fact as to whether they had given the attorney authority to make a settlement on their behalf. We affirm and remand for further proceedings.

## I. Background Facts and Proceedings.

This case arises out of a partition-in-kind and sale action, which Ronald Gilbride filed in Kossuth County on August 27, 1997. At the time, Gilbride owned an undivided one-fifth interest in 160 acres of farmland. The petition named Theodore and Rosalie as defendants, in addition to Mary Kahler, each of whom also owned an undivided one-fifth interest in the farmland. The petition also named as defendants Donald Trunnelle, David Trunnelle, Glen Trunnelle, Gordon Trunnelle, and Susan Fudurich, each of whom owned an undivided one-twenty-fifth interest in the farmland. Gilbride alleged that the farmland could be equitably divided so that he would receive a specific one-fifth division of the property.

On September 16 attorney James Hudson of Pocahontas filed an answer to the petition on behalf of all the defendants. On the same day, Hudson wrote Eldon J.

Winkel, who represented Gilbride. In his letter, Hudson advised Winkel that he had visited with Mary Kahler, who had agreed to act as the Iowa spokesperson for the defendants. Hudson further advised that (1) Kahler had indicated she would like to work with Gilbride and (2) he had explained the nature of the partition action to Kahler, and she in turn had explained the action to the other defendants. Hudson stated that the defendants would be willing to either buy out Gilbride's interest or sell him a portion of the farmland.

Shortly after the petition was filed, Rosalie gave the original notice and petition that had been served on her to an Algona attorney, Robert Dotson, for him to review. On September 23 Dotson and Rosalie had a telephone conversation about the lawsuit in which she advised Dotson that Kahler had retained Hudson to represent all of the defendants. Dotson followed up the conversation with a letter in which he advised Rosalie that it would be foolish for the defendants to have more than one attorney. Dotson further stated:

> It is my understanding that you will confer directly with Attorney Hudson concerning these matters, and, of course, enter into an attorney/client employment contract with him. Since Mr. Hudson will be representing you and presumably other defendants in this matter, I will not enter an appearance nor an answer to the petition....

On February 26, 1998, an order was entered setting a settlement conference for April 20, 1998, and trial for April 23, 1998.

On March 23, 1998, Winkel wrote to Hudson with a proposed settlement: Gilbride would receive the east forty acres of the farmland in exchange for (1) giving up his interest in a "building site" on the land, (2) paying $7500 to the defendants, and (3) dismissing the partition action. At some point before this offer was made, Gilbride apparently had purchased the one-twenty-fifth interests of Glen Trunnelle and Gordon Trunnelle.

On April 2 Rosalie wrote Gilbride proposing a counteroffer: Gilbride would receive thirty-one acres and a one-fifth interest in the "acreage," which would be sold as a separate unit at a future date. In her letter, Rosalie gave a proposed legal description of the thirty-one acres and suggested that she could "have a lawyer check it for [her] and draw it up."

On April 8 Winkel responded to the letter and sent to Hudson a courtesy copy of his response as well as Rosalie's April 2 letter. In his letter to Rosalie, Winkel rejected her counteroffer, reiterated Gilbride's offer, and advised her that "[a]s Mr. Hudson is representing all of the defendants' interests, we are sending him a copy of this letter and a copy of your letter dated April 2, 1998, to Ron."

On April 16 Hudson called Winkel's office and spoke to his secretary. The secretary's written record of the call stated that the defendants were proposing to transfer to Gilbride the east thirty-seven acres of the farmland.

Shortly after April 16 and before the April 23 trial date, Winkel and Hudson worked out a settlement agreement whereby Gilbride would receive the east thirty-seven acres in consideration for his dismissal of the suit. The attorneys then cancelled the trial scheduled for April 23.

On April 29 Winkel wrote Hudson, enclosing a proposed warranty deed (purporting to transfer the east thirty-seven acres and containing signature lines for each defendant and spouse) and a document, captioned "Notation of Settlement Agreement." The following day, Hudson wrote back, stating that he had reviewed both documents and that they were "fine." Hudson sent Kahler a courtesy copy of this letter.

On May 1 Winkel wrote Hudson, asking Hudson to sign the enclosed "Notation of Settlement Agreement" and return it to Winkel.

The notation of settlement agreement provided, among other things, that (1) the

parties had through their respective attorneys entered into a "binding settlement agreement in consideration for the ultimate dismissal" of the partition action, (2) Gilbride would receive the east thirty-seven acres of the farmland, and (3) Gilbride would dismiss with prejudice the lawsuit "upon proper execution by all parties concerned of the documents necessary to complete said partition." The last paragraph of the notation of settlement agreement stated: "The foregoing agreement is executed on behalf of the Plaintiffs and Defendants by their respective attorneys and intended to be filed in the above-entitled cause for the purpose of indicating that same has been settled and the terms thereof." Both attorneys signed the agreement on May 4.

On June 30 Winkel wrote Hudson, suggesting that Hudson might be having trouble convincing all of the defendants to sign the deed. Additionally, Winkel stated he "strongly" felt that Hudson would not be able to get all of the defendants' signatures on the deed. Winkel also stated that Theodore, who was living on the farm with his sister, Rosalie, came into Winkel's office, and he sounded like "he was not going to be willing to sign anything." Winkel proposed that he file a motion in the partition suit, requesting the court to appoint a receiver to execute the deed conveying title to Gilbride pursuant to the agreement.

On July 1 Hudson responded, indicating that Kahler had agreed to contact the other defendants about signing the deed.

On August 4 Gilbride filed a motion to amend his petition and an amended petition. The amendment alleged that Gilbride was the owner of the east thirty-seven acres of the subject farmland because of the notation of settlement agreement. Gilbride requested, among other things, that the court appoint a referee to execute a deed on behalf of the defendants to transfer the east thirty-seven acres.

On August 28 Hudson filed a resistance to Gilbride's motion to amend and the amended petition. Hudson filed the resistance on behalf of all the defendants except Theodore and Rosalie and alleged that Theodore and Rosalie refused to sign a deed in fulfillment of the notation of settlement agreement. The resistance further alleged that, because of the refusal of the two defendants to participate in the partition in kind, the court should appoint a referee and determine each of the parties' interest and partition the real estate entirely by sale.

As part of the resistance, Kahler, Donald Trunnelle, David Trunnelle and Susan Fudurich cross-petitioned for partition by sale against Gilbride, Theodore, and Rosalie.

The district court granted Gilbride's motion to amend. Later, Gilbride filed a motion for partial summary judgment supported by affidavit against all the defendants. He requested that the court enter summary judgment for him to receive the east thirty-seven acres of the real estate. Kahler, Donald Trunnelle, David Trunnelle, and Susan Fudurich resisted the motion. They admitted "that prior to trial a settlement agreement was agreed to between the respective counsel for and on behalf of the parties but denie[d] that said settlement agreement was a complete and binding agreement on all parties." Kahler submitted an affidavit in support of the resistance. Theodore and Rosalie did not file a resistance.

The district court held a hearing on the motion, but the hearing was not reported. Hudson, Winkel, and Kahler were present. None of the other defendants attended, but Rosalie did participate by telephone at which time she said that she opposed Gilbride's motion for partial summary judgment. The district court ruled it was undisputed "that at the time the settlement was arrived at, through Mary Kahler, [Hudson] had authority from all of the defendants to enter into [the] settlement agreement and to sign the Notation of Settlement Agreement." The court grant-

ed Gilbride's motion for partial summary judgment, deeming him the owner of the east thirty-seven acres of the farmland.

Only Theodore and Rosalie appealed.

## II. Issues.

The appellants, Theodore and Rosalie, raise two issues on appeal. They first contend that there is a genuine issue of material fact as to whether Hudson was their attorney at the time Hudson conveyed the settlement offer on April 16, 1998. The appellants alternatively contend that, even if an attorney-client relationship existed, there is a genuine issue of material fact as to whether they had given Hudson authority to enter into a settlement agreement on their behalf.

## III. Scope of Review.

■ The district court has authority to enforce settlement agreements made in a pending case. *Wright v. Scott,* 410 N.W.2d 247, 250 (Iowa 1987); *Wende v. Orv Rocker Ford Lincoln Mercury, Inc.,* 530 N.W.2d 92, 94 (Iowa App.1995). The district court may summarily enforce a settlement agreement on motion by one of the parties when, as here, a party amends his or her pleadings to assert settlement as an additional claim in the original lawsuit. *Wende,* 530 N.W.2d at 94. However, as a remedy to enforce a settlement agreement, summary judgment is proper only when

> [p]leadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

Iowa R.Civ.P. 237(c); *see also Wende,* 530 N.W.2d at 94 (holding that, on appeal, standards applicable to summary judgment are applied in determining whether summary enforcement of a settlement agreement is appropriate).

■ On the other hand, if there are genuine issues of material fact surrounding the settlement, the issue is not appropriate for summary judgment, but rather must be resolved by a finder of fact. *Wende,* 530 N.W.2d at 94.

## IV. Whether There Was an Attorney Client Relationship at the Time of the Settlement Offer.

■ As mentioned, the appellants first contend that there is a genuine issue of material fact as to whether Hudson was their attorney at the time Hudson made the settlement offer on April 16, 1998. The appellants concede that Hudson represented them in September 1997 when Hudson filed an answer for all the defendants in the partition action. However, the appellants contend, when Rosalie made the counteroffer to Gilbride on April 2, 1998, the attorney-client relationship ended.

The summary judgment record shows that all of the defendants except Theodore and Rosalie resisted Gilbride's motion. The resisting defendants conceded that Hudson was representing *all* of the defendants when the offer was made on April 16, 1998, notwithstanding Rosalie's counteroffer of April 2, 1998. Kahler's affidavit in support of the resistance to Gilbride's motion for partial summary judgment confirms this fact:

> When this partition action was started I contacted each one of the defendants and they agreed that we should have one lawyer. We selected James C. Hudson of Pocahontas, Iowa, to represent us, who filed an answer on behalf of all of the defendants. From the start of the lawsuit I was the spokesperson for the group of defendants and contacted them from time to time with information from attorney Hudson. They did not meet with him directly nor speak with him directly, but I was the contact person inasmuch as a number of the defendants in the Trunnelle family lived in California.
>
> . . . .

Through negotiations just prior to trial in April 1997, we were able to reach an agreement. All of the defendants at that time agreed to the agreement that Ronald Gilbride should receive the east 37 acres. We instructed Mr. Hudson to prepare a deed and other paper work in conformance with that agreement. We were advised that the trial would not be held because we had settled it and I did not attend the trial.... Theodore R. Trunnelle and Rosalie Bonavia refused to sign the deed once it had been prepared. At that point in time it became obvious to those of us who were remaining landowners that there would be problems in the future with Rosalie Bonavia and Theodore R. Trunnelle and we decided at that point in time that we could no longer move forward to attempt to settle this by partitioning in kind but decided to file a cross-petition ... to reiterate our belief that the farm could not be partitioned but needed to be sold....

Additionally, the resisting defendants concede in their statement of disputed facts that prior to trial the parties through their attorneys negotiated a settlement agreement evidenced by the notation of settlement agreement. The resisting defendants also stated in their memorandum of authority that

[Hudson] continued to represent *all* of the defendants *up to and including the time of entering into the notation of settlement. This has never been disputed by attorney Hudson nor any of the defendants.* At such time as defendants Theodore R. Trunnelle and Rosalie Bonavia communicated to attorney Hudson that they did not want to sign deeds and they would not go along with the compromise, attorney Hudson encouraged them to participate in the compromise as he believed it was in their best interest. *However, once it became clear that they did not, attorney Hudson felt that he no longer represented their interest.... Defendants Theodore R. Trunnelle and Rosalie Bonavia have basically been without representation in this matter since August of 1998....*

(Emphasis added.)

Therefore, according to the memorandum, to the extent the attorney-client relationship between the appellants and Hudson was actually terminated, such termination did not occur until sometime in August 1998—over three months after the offer was made and the settlement was reached.

In the absence of a resistance and an affidavit from the appellants to support their contention that Hudson did not represent them when the settlement offer was made and settlement was reached, no genuine issue of material fact exists as to this contention. The only record made by the appellants was Rosalie's statement at the summary judgment hearing that she opposed Gilbride's motion for partial summary judgment. According to our rules of civil procedure, that statement was not enough to raise a genuine issue of material fact on the attorney-client relationship. *See* Iowa R.Civ.P. 237(e) (providing that, when a motion for summary judgment is supported by affidavit, depositions, answers to interrogatories or oral testimony, the opposing party may not rest on his or her pleading but must respond by affidavit or as otherwise provided by the rule and set forth specific facts showing a genuine issue for trial). Simply put, whether an attorney-client relationship between appellants and Hudson existed at the time in question was not an issue in the district court.

### V. Whether Hudson Had Authority to Enter Into a Settlement Agreement.

■ For their alternative contention, the appellants assert there is a genuine issue of material fact as to whether Hudson had authority from the appellants to enter into the settlement agreement on their behalf. This was the issue the dis-

trict court decided, and the court decided Hudson did have such authority.

■ Iowa Code section 602.10114 provides that an attorney has power to "[b]ind a client to any agreement, in respect to any proceeding within the scope of the attorney's or counselor's proper duties and powers...." Iowa Code § 602.10114(2) (1997). An attorney's offer of settlement is generally within the scope of the attorney's litigation duties. *See Strong v. Rothamel,* 523 N.W.2d 597, 600 (Iowa App. 1994); *Starlin v. State,* 450 N.W.2d 257, 258 (Iowa App.1989). However, an attorney cannot settle or compromise a case without authority. *Dillon v. City of Davenport,* 366 N.W.2d 918, 924 (Iowa 1985). If a settlement is made with authority, that settlement is binding on the client. *Id.; see* Iowa Code § 602.10114(2).

■ An attorney is presumed to act with authority. *Dillon,* 366 N.W.2d at 923. The presumption, however, is not conclusive and may be rebutted. *Id.* The presumption is overcome only by clear and satisfactory proof. *Lonning v. Lonning,* 199 N.W.2d 60, 62 (Iowa 1972).

■ In its ruling granting the motion for partial summary judgment, the district court noted that Hudson stated at the hearing that all of the defendants, including the appellants, had agreed to the settlement. Hudson's statement to the court was a professional statement. A professional statement "means a statement of fact presented to the court by an attorney in connection with a matter then before such court, verified in effect by the oath of such attorney, and designed or calculated to aid or influence the court in the determination of a given cause or issue." *State v. Williams,* 315 N.W.2d 45, 53 (Iowa 1982) (quoting *Cogley v. Hy–Vee Food Stores, Inc.,* 257 Iowa 1381, 1386–87, 137 N.W.2d 310, 313 (1965)).

■ Additionally, a professional statement

"is a technique, used as a matter of convenience and practical necessity to establish a record of matters peculiarly within the knowledge of an attorney. In offering a professional statement an attorney pledges the honor of his profession and his personal integrity. It has the effect of an affidavit."

*Id.* (quoting *State v. Brewer,* 247 N.W.2d 205, 212 (Iowa 1976)). Hudson's statement to the district court regarding the extent of his authority clearly concerned a matter within his knowledge. Because the statement had the status of an affidavit, the district court could properly consider it. *See Wende,* 530 N.W.2d at 95.

In addition to Hudson's professional statement, the district court noted that according to Kahler's affidavit Hudson—through Kahler—had authority from all the defendants to enter into the settlement agreement and to sign the notation of settlement agreement. We agree with the district court's assessment of Kahler's affidavit. Like the district court, we find nothing in the summary judgment record to refute Kahler's affidavit on this point.

To further support its conclusion, the district court cited the following language from the "Statement of Disputed Facts" signed by Hudson on behalf of those defendants resisting Gilbride's motion for partial summary judgment:

Prior to trial in the spring of [1998] the parties, through their attorneys of record, *negotiated a settlement which is evidenced by the Notation of Settlement Agreement filed in this record, reliance upon which trial date was missed. Said settlement was negotiated in good faith by both of the attorneys and all of the parties in this matter.*

The only defense Hudson presented at the summary judgment hearing was based on the following italicized language in the first sentence of the notation of settlement agreement:

COMES NOW, Eldon J. Winkel, attorney for plaintiff and James C. Hudson,

252

attorney for defendants, and hereby state that the above-entitled case was set for trial on April 23, 1998, however, prior thereto the parties, through their respective undersigned attorneys, entered into a binding settlement agreement in consideration for the ultimate dismissal of the above-entitled cause *upon the proper execution by all interested parties to carry out the terms of the settlement agreement.*

(Emphasis added.)

Hudson's defense (which the appellants have not urged on appeal) was that there was to be no settlement until the deeds were signed. The district court properly rejected the argument, stating its reasoning as follows:

That phrase ["upon the proper execution by all interested parties to carry out the terms of the settlement agreement"] is obviously a statement of time when something would happen, namely, dismissal of the lawsuit. If the phrase is read in context with what appears immediately before it, it becomes clear that the parties have agreed that the lawsuit would be dismissed upon proper execution by all interested parties of whatever documents are necessary to carry out the terms of the settlement.

For the foregoing reasons, we conclude that the appellants have not demonstrated that there was record evidence generating a genuine issue of material fact on whether Hudson had the authority to settle on their behalf. They make much of the fact that witnesses did not testify as to the nature of the communications between Hudson, Kahler, and the other defendants. They repeatedly argue that the record is thin and that "we simply don't know" on this record who said what, when they said it, and what exactly happened. However, the appellants had the burden to adequately resist the summary judgment motion once Gilbride presented a record of undisputed facts that sufficiently supported summary judgment. *See* Iowa R.Civ.P. 237(c), (e); *see also Humphries v. Method-*

*ist Episcopal Church,* 566 N.W.2d 869, 872–73 (Iowa 1997) ("A factual issue does not arise simply from the claim that one exists."). They cannot now assert that a thin record warrants a reversal of the summary judgment when they presented nothing to generate a genuine issue of material fact.

## VI. Disposition.

Because there exists no genuine issue of material fact on Hudson's authority to represent the appellants or his authority to settle on their behalf, we affirm. We remand for further proceedings.

**AFFIRMED AND REMANDED.**