# In the Iowa Supreme Court

No. 23–0990

Submitted October 8, 2025—Filed December 5, 2025

**Oscar Recio** and **Maria Recio,**

Appellants,

vs.

**Frederick M. Fridley, D.L. Peterson Trust, Securitas Security Services USA, Inc.,** and **Doe Corporation,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Warren County, Thomas P. Murphy, judge.

Plaintiffs, whose attorney settled a personal injury claim on their behalf, seek further review of the court of appeals decision upholding the district court's order enforcing the settlement agreement. **Decision of Court of Appeals and District Court Judgment Affirmed.**

Waterman, J., delivered the opinion of the court, in which all justices joined except Oxley, J., who filed a dissenting opinion.

Christopher P. Welsh of Welsh & Welsh, PC, LLO, Omaha, Nebraska, for appellants.

Spencer S. Cady of Nyemaster Goode, P.C., Des Moines, and Daniel R. Sarther of Christensen Hsu Sipes, LLP, Chicago, Illinois, for appellees Frederick M. Fridley, D.L. Peterson Trust, and Securitas Security Services USA, Inc.

**Waterman, Justice.**

Either Oscar Recio's first Texas attorney had authority to settle his personal injury claim, or he did not. We are asked to determine whether the district court erred when it found that the attorney had settlement authority and that the Recios are bound by the settlement their attorney negotiated. Importantly, this matter was not resolved by summary judgment. Rather, with no objection from the parties, the district court acted as the factfinder. Our court of appeals found no error in the district court ruling. We agree and, therefore, affirm.

### I. Background Facts and Proceedings.

Oscar Recio is an over-the-road trucker. He lives in Hidalgo, Texas, with his wife, Maria. On December 7, 2020, as Oscar was travelling through Adair, Iowa, he stopped his truck to make repairs. He parked on the shoulder of an Interstate 80 on-ramp, exited his truck, slid under the vehicle, and began working.

Meanwhile, Frederick M. Fridley was driving a 2017 Ram utility van as part of his employment with D.L. Peterson Trust.[1] Fridley, as he was entering the Interstate 80 on-ramp, dropped his cellphone. Distracted as he attempted to retrieve the device, Fridley crashed his van into Recio's parked semi. Recio, who was still underneath his truck at the time of the wreck, suffered injuries.

Recio retained a Texas attorney, Cesar Palma, with the Tijerina Law Group, to represent him on his personal injury claims. In October of 2021, Palma sent Fridley's insurer a pre-suit settlement demand for "the policy limits." He received no response. Another employee of Palma's firm continued reaching out to the

---

[1]Unless noted otherwise, we will use "Fridley" as a synecdoche for the Defendants–Appellees.

insurer until, in mid-January of 2022, an insurance representative, Trent Merkley, responded with an offer of $105,000. Palma countered, requesting $425,000. After several rounds of negotiations, Palma told Merkley to "[g]et authority for [$125,000] and send me a release [of claims]." Shortly thereafter, Merkley emailed Palma a release of claims for $125,000. Recio never signed the release.

Later, Recio hired a new Texas attorney, Robert Cantu of Houston, who claimed Palma lacked authority to settle Recio's case. Cantu attempted to negotiate a new settlement with the insurer. Those efforts failing, Recio, now represented by Omaha counsel, filed this personal injury action in the Iowa District Court for Warren County, where Fridley resides. The lawsuit also named Fridley's employer.

The defendants answered the petition, then filed a motion to enforce settlement "pursuant to Iowa Rule 1.431," which governs motion practice generally. The motion did not cite Iowa Rule of Civil Procedure 1.981, governing summary judgment, or use the term "summary judgment." Neither did the accompanying memorandum, which included as exhibits Palma's emails settling the case for $125,000 and the unsigned release. Nineteen days later, Recio's counsel filed a resistance denying that there was a prior settlement. The resistance was accompanied by Oscar's affidavit, which stated in full:

> My name is Oscar Recio. I am of legal age, am in all ways competent to make this affidavit, and have personal knowledge of all facts recited herein.
>
> I had previously retained attorneys the Tijerina Legal Group, P.C. in McAllen, Texas to represent me for this accident. I was specifically dealing with Mr. Cesar Palma with the Tijerina Legal Group.
>
> At no time did Mr. Palma inform me that a demand letter had been sent to the insurance company to try and settle the case. At no

time did Mr. Palma get my authority to accept, reject, or negotiate any offer on my behalf. At no time did Mr. Palma convey any offers or numbers that the insurance company was sending over. At no time did Mr. Palma get my authority to make counteroffers on my behalf. At no time was I informed of any settlement talks or negotiations for my case. I have never signed any release agreeing to accept $125,000.00 to settle my case and I have never given verbal or written approval to accept $125,000.00 to settle my case. I then terminated the relationship with the Tijerina Law Group due to lack of communication.

I then retained Mr. Rob Cantu with Roberts Markland LLP in Houston, Texas to represent me for this accident. It wasn't until this time that Mr. Cantu Informed me that Mr. Palma asked the insurance company for a release for $125,000.00 and that Mr. Palma had been negotiating and making counteroffers without my knowledge and authority.

All of this was done without my knowledge, consent, and authority, and I never approved or gave verbal or written authority to accept any offer or negotiate on my behalf.

Further Affiant sayeth not.

The affidavit nowhere states that Oscar told Palma he lacked authority to negotiate with the opposing parties or that he was prohibited from such negotiations. The resistance also included emails reflecting attorney Cantu's subsequent settlement efforts.

Nowhere did the resistance characterize the defendants' motion as one for summary judgment. The defendants filed a reply that argued the resistance was untimely under Iowa Rule of Civil Procedure 1.431(4) (requiring a resistance within ten days).[2] The reply did not cite rule 1.981 or use the term "summary judgment." The reply argued that Recio's affidavit was insufficient to rebut Palma's presumed settlement authority by the requisite "clear and convincing evidence."

---

[2]By contrast, Iowa Rule of Civil Procedure 1.981(3) allows fifteen days to file a resistance to a motion for summary judgment.

The district court issued an order setting a hearing on the defendant's motion to enforce the settlement. The order stated, "This matter is set for 30 mins on a Court Service Day. If more time is needed, the parties shall contact the court immediately." The Recios did not request more time, but their counsel asked to participate in the hearing remotely, which the court allowed. The day before the hearing, the court informed the lawyers for all parties: "If you plan on presenting testimony, we need to continue [the hearing] to a non-court service day. Tomorrow, we only have time for short arguments. Please let us know." The lawyers replied that they did not intend to present testimony.

The district court conducted the hearing by Zoom as though it were a bench trial. The district court accepted exhibits. It asked for objections. It took Oscar's testimony by affidavit. It gave the parties an opportunity to present further testimony, an opportunity both parties declined. It heard arguments on the presented evidence. All this without any citation by the Recios—orally or in writing—to rule 1.981 or any argument that the court should conduct the proceedings like a hearing on a motion for summary judgment.

The district court entered an eight-page order enforcing the settlement. The court found that the "emails clearly establish that Mr. Merkley accepted Mr. Palma's demand to settle the case for $125,000." The court found that Palma, as the Recios' attorney at the time, was "presumed to act with their[] authority" and that "[r]ebutting that presumption requires 'clear and convincing' proof." The court, after reviewing the documentary evidence admitted into evidence at the hearing, further found:

> The affidavit from Mr. Recio is not clear and convincing evidence that Mr. Palma acted without authority. The Recios opted not to present testimony. There is no evidence that Mr. Palma is subject to an ethics complaint. There was no submission from

Mr. Palma. The court cannot find, without "serious or substantial uncertainty," that Mr. Palma acted without authority.

The district court relied on Iowa precedent where the district court acted as factfinder. The court did not mention Iowa Rule of Civil Procedure 1.981 or use the term "summary judgment."

The Recios filed a motion to reconsider, which disagreed with the court's findings without challenging the procedure the court used to adjudicate the matter. The Recios' motion to reconsider never cited rule 1.981 or argued that the district court should not have decided the factual issues. Instead, the motion to reconsider acknowledged that the court's "[f]indings of fact in a law action are binding on us if supported by substantial evidence" and that the evidence is to be viewed in the "light most favorable to sustaining the court's judgment." The court denied the motion to reconsider.

The Recios appealed. Their appellate brief raised for the first time the argument that Oscar's affidavit created a "genuine issue of material fact" precluding "summary judgment" enforcing the settlement. The defendants' brief responded that the district court's factual findings are supported by substantial evidence and are binding on appeal. We transferred the case to our court of appeals, which affirmed the district court's order enforcing the settlement.

The court of appeals "rejected the premise that the [district] court made a summary-judgment ruling." Instead, the appellate panel examined the record to determine whether the district court's factual findings were supported by substantial evidence. The appellate panel concluded that "under our deferential review of the district court's factual findings, we have little difficulty holding that substantial evidence supports the finding that Palma had authority to settle the case." The panel reasoned,

True, the Recios presented the affidavit of Oscar Recio and later email exchanges between the claims examiner and their new attorney in an attempt to rebut the presumption of [Palma's] authority. But the district court was not required to believe the affidavit. Nor was it required to find the claims examiner's emails ten months later—after being informed the Recios were not recognizing the settlement—had any legal effect on whether Palma in fact had authority. Given the references in Palma's emails to talking with his client, the seriousness of the ethical breach if Palma had been lying and acting without authority, and the absence of any corroborating evidence from Palma or otherwise, a reasonable mind could conclude that this evidence was not clear and satisfactory proof to rebut the presumption of attorney authority. And the district court so found. We need not consider whether this evidence could have supported the contrary finding because that is not the question we ask in substantial evidence review.

The Recios applied for further review. We granted their application.

## II. Standard of Review.

When reviewing the enforceability of settlement agreements, our courts use an *if-then* approach. If the important facts are undisputed, then courts may summarily enforce the agreement upon a party's motion. *Wende v. Orv Rocker Ford Lincoln Mercury, Inc.*, 530 N.W.2d 92, 94 (Iowa Ct. App. 1995). And, on appeal, we will review the district court's decision using the same standards applicable to a summary judgment ruling. *Id.*

If, however, the material facts are disputed, then the finder of fact must resolve the dispute. *Id.* The matter may be tried as an additional claim in the original action, or the court may hold a separate hearing on the validity of the settlement. *Id.* When the matter is submitted to and decided by the court as the finder of fact, we review the decision as we would a jury verdict, considering only the parties' assigned errors. *Id.* at 95. The findings made by the trial court are binding if supported by substantial evidence. *Id.*

**III. Analysis.**

Because we take a divided approach when reviewing district court orders enforcing settlement agreements, the first question we must answer is whether we should review this case under our summary judgment rubric or under the substantial evidence review that we apply when the district court is the factfinder.[3] We agree with the court of appeals that the substantial evidence standard applies here.

In his filings to the district court, Oscar did *not* argue that there were genuine factual disputes preventing the court from summarily adjudicating the enforceability of the settlement agreement, but rather that his attorney lacked authority to create a settlement agreement in the first place. In other words, he argued the case on the merits, not on the procedure that the district court should use in addressing the merits.[4] So, in function—and in form—the district court's hearing on the motion to enforce the settlement was a bench trial on the issues of the existence and enforceability of a settlement agreement. *See* Iowa R. Civ. P. 1.914 (allowing a separate trial by the court on any issue). The district court's factual findings are binding on appeal if supported by substantial evidence. *Wende*, 530 N.W.2d at 95; Iowa R. App. P. 904(3)(*a*).

---

[3]The Recios' application for further review argues the district court lacked "subject matter jurisdiction" to adjudicate the validity of the settlement reached in Texas. The argument appears to confuse subject matter jurisdiction over a type of case and personal jurisdiction over the parties. In any event, the district court clearly has subject matter jurisdiction over this common law tort action and has personal jurisdiction over the parties on claims arising from Oscar's accident in Iowa, where Fridley resides.

[4]This conclusion is bolstered by the fact that the district court offered to continue the hearing if the parties wished to present testimony; neither side accepted that offer. Had the Recios taken issue with the procedure, they could have requested a continuance or objected to the limited scope of the hearing. They did not. In fact, at the hearing, their counsel argued primarily that there had not been a "meeting of the minds"—an issue that goes to the settlement agreement's validity, not the case's procedural posture.

The Recios argue that the district court erred when it found that Palma had authority to settle the personal injury claim. They focus on the absence of evidence that Oscar extended express settlement authority to Palma; they also note that Oscar never signed the release. We find no error in the district court's ruling.

Settlement agreements are contracts. *See Sierra Club v. Wayne Weber LLC*, 689 N.W.2d 696, 702 (Iowa 2004). Therefore, when determining whether a settlement was formed and when interpreting its provisions, we apply principles of contract law. *Id.* For an agreement to be binding on the parties, they must manifest their mutual assent to the terms of the agreement. *Id.* As we have stated,

> The law favors settlements. "We have long held that voluntary settlements of legal disputes should be encouraged, with the terms of settlements not inordinately scrutinized." Particularly with settlement agreements, "in the absence of an express reservation of rights, a settlement agreement disposes of all claims between the parties arising out of the event to which the agreement related."

*McNeal v. Wapello County*, 985 N.W.2d 484, 491 (Iowa 2023) (citation omitted) (first quoting *Walker v. Gribble*, 689 N.W.2d 104, 109 (Iowa 2004); and then quoting *Waechter v. Aluminum Co. of Am.*, 454 N.W.2d 565, 568–69 (Iowa 1990)). Attorneys are agents of their clients. *Dillon v. City of Davenport*, 366 N.W.2d 918, 924 (Iowa 1985). Agents, so long as they act within the scope of their authority, can form agreements binding upon their principals (i.e., clients). *Id.* But, an attorney cannot settle a case without authority. *Id.*

Authority comes in two categories: (1) actual authority and (2) apparent authority. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal

wishes the agent so to act." Restatement (Third) of Agency § 2.01, at 80 (A.L.I. 2006). Actual authority may be "express" or "implied." Express actual authority exists when a principal provides explicit instructions directing the agent to act or refrain from acting. Implied actual authority exists when, "[a]n agent has actual authority to take action designated or implied in the principal's manifestations to the agent and acts necessary or incidental to achieving the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives when the agent determines how to act." *Id.* § 2.02(1), at 89.

"Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Id.* § 2.03, at 113.

"Iowa Code section 602.10114 provides that an attorney has power to '[b]ind a client to any agreement, in respect to any proceeding within the scope of the attorney's or counselor's proper duties and powers . . . .' " *Gilbride v. Trunnelle*, 620 N.W.2d 244, 251 (Iowa 2000) (en banc) (alteration and omission in original) (quoting Iowa Code § 602.10114(2) (1997)). "An attorney's offer of settlement is generally within the scope of the attorney's litigation duties." *Id.* Attorneys are presumed to act with authority, although the presumption is rebuttable. *Dillon*, 366 N.W.2d at 923. But, to overturn the presumption of authority, the challenger must produce clear and satisfactory proof. *Gilbride*, 620 N.W.2d at 251.

In this case, the district court determined that Oscar had not rebutted the presumption that Palma was acting on Oscar's authority. On review, we ask only whether that determination was supported by substantial evidence, meaning

that if reasonable minds would accept the evidence as adequate to reach the same conclusion, then we will uphold the decision. *Crow v. Simpson*, 871 N.W.2d 98, 105 (Iowa 2015). "Evidence is not insubstantial merely because [courts] may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Id.* (alteration in original) (quoting *Postell v. Am. Family Mut. Ins.*, 823 N.W.2d 35, 41 (Iowa 2012)). We conclude that the district court's decision was supported by substantial evidence.

Oscar's affidavit confirms that Palma was his lawyer when he negotiated the settlement. The affidavit faults Palma for not keeping Oscar in the loop on settlement talks. But nowhere does Oscar's affidavit assert that he ever told Palma *not* to negotiate with the adverse parties or otherwise restricted his authority to negotiate when he was hired. The district court had email correspondence between Palma and the insurer's representative, Merkley, that supported its finding that Palma had consulted Oscar and received authority for a $125,000 settlement. In the emails, Palma said he had been in touch with his client. The Recios submitted no testimony from Palma or from the insurer to rebut Palma's presumed authority. And the Recios offered no evidence that they had asserted a claim against Palma or made an ethics complaint against Palma. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Sotak*, 706 N.W.2d 385, 388–89, 390–91 (Iowa 2005) (imposing a two-year suspension on an attorney whose ethical violations included settling his client's personal injury claim without authority); *Bellino v. Comm'n for Law. Discipline*, 124 S.W.3d 380, 386, 390 (Tex. App. 2003) (disbarring an attorney who failed to communicate settlement offers to multiple clients, among other ethical violations).

The only evidence weighing against the presumption of Palma's authority was Oscar's own affidavit. The district court could find it failed to rebut Palma's presumed authority—a finding that is binding on appeal. *Plymouth Farmers Mut. Ins. Ass'n v. Armour*, 584 N.W.2d 289, 292 (Iowa 1998) ("On appeal in a law action we are bound by such factual findings on the credibility of witnesses.")

We agree with the court of appeals that a reasonable mind could accept the evidence before the district court as adequate to conclude that Oscar failed to rebut the presumption that Palma had authority to settle the personal injury claim. "As an appellate court we are in no position to question the trial court's determination of this fact question anymore than we could question the findings of a jury if the same question had been submitted to it." *Cunningham v. Iowa-Ill. Gas & Elec. Co.*, 55 N.W.2d 552, 555 (Iowa 1952) (affirming order enforcing settlement).

The Recios did not object to the submission of the motion to enforce the settlement to the district court as factfinder. They thereby failed to preserve error on their belated challenge to the procedure used to enforce the settlement, including their claim that the issue of Palma's authority should have been tried to a jury. *See Wende*, 530 N.W.2d at 95 ("Since Wende did not object to the submission of motion to the court as the finder of fact, she failed to preserve any claim of error involving the procedure followed by the trial court."); *see also Cunningham,* 55 N.W.2d at 554 (affirming trial court order enforcing a settlement because "both parties were apparently agreeable to having the trial court determine the fact issues presented"). We therefore affirm the district court's ruling enforcing the settlement and dismissing the Recios' action with prejudice upon the defendants' payment of $125,000.

**IV. Disposition.**

For the reasons set out above, we affirm the decision of the court of appeals and the district court's judgment enforcing the settlement.

**Decision of Court of Appeals and District Court Judgment Affirmed.**

All justices concur except Oxley, J., who files a dissenting opinion.

**Oxley, Justice (dissenting).**

Litigation is not a game of gotcha. "Our rules of procedure do not provide for a motion to enforce a settlement agreement." *Wende v. Orv Rocker Ford Lincoln Mercury, Inc.*, 530 N.W.2d 92, 94 n.1 (Iowa Ct. App. 1995). This case demonstrates why they should. Even so, when the defendants asked for summary enforcement, the district court should have treated it as such: a motion for summary judgment. I respectfully dissent.

Instead of rummaging through the record and speculating whether the parties treated the proceeding as more of a summary judgment hearing or more of a bench trial, we should require a party moving to enforce a settlement agreement to pick a path. Either seek summary enforcement and apply the summary judgment standard, *see* Iowa R. Civ. P. 1.981, or ask for a bench trial and let the judge make the necessary factfindings, *see id.* r. 1.914. The majority, following what the court of appeals laid out thirty years ago in *Wende v. Orv Rocker Ford Lincoln Mercury, Inc.*, 530 N.W.2d at 94, must do a lot of rummaging to try to determine the procedural posture of the district court proceedings—a procedure that frankly had elements of both. That isn't necessary. *Wende* hinted at an easier path, but then it chose the harder one. It is time to steer our district courts back to the clearer road.

I dissent for three reasons. First, Recio's affidavit created a fact issue that overcame the presumption about an attorney's authority to enter a settlement agreement. Second, in a case like this where the moving parties asked for a summary proceeding to enforce a settlement, that's all they should get; an issue of material fact should defeat the motion. Finally, even following *Wende*, the

record shows the parties treated this proceeding more like summary judgment than a bench trial.

**I. Recio's Own Testimony Creates a Fact Issue Concerning Palma's Authority.**

I start by addressing whether the parties presented evidence to create a factual dispute about Palma's authority to settle the Recios' claims. If there is no genuine dispute, then the procedural posture of the case is immaterial because the defendants are entitled to judgment as a matter of law either way.

Even though we presume that an attorney acts with his client's authority to settle a case, an attorney who negotiates and reaches a settlement without the client's authority does not bind the client. *Gilbride v. Trunnelle*, 620 N.W.2d 244, 251 (Iowa 2000) (en banc); *Dillon v. City of Davenport,* 366 N.W.2d 918, 923–24 (Iowa 1985). And the presumption doesn't arise from the mere fact that an attorney represents the client. Under Iowa Code section 602.10114, an attorney has the authority to "[b]ind a client to any agreement, in respect to any proceeding within the scope of the attorney's or counselor's proper duties and powers." Iowa Code § 602.10114(2) (2022). "[B]ut no evidence of any such agreement is receivable, *except the statement of the attorney in person*, the attorney's or counselor's written agreement signed and filed with the clerk, or an entry thereof upon the records of the court." *Id.* (emphasis added). We treat an attorney's professional statement as satisfying this standard. *See Gilbride*, 620 N.W.2d at 251 (explaining that the district court could consider the attorney's "statement to the district court regarding the extent of his authority" as a professional statement for purposes of section 602.10114(2)).

Notably, Palma did not testify here. Nor did the defendants provide a professional statement from Palma that Recio authorized him to negotiate a settlement—for example, by submitting an affidavit. The lack of *any* evidence

directly from Palma that he had Recio's authority to settle the claim distinguishes this case from *Gilbride v. Trunnelle* and *Wende*, where both attorneys made professional statements about their actual authority. *See Gilbride*, 620 N.W.2d at 251 ("Hudson stated at the hearing that all of the defendants, including the appellants, had agreed to the settlement. Hudson's statement to the court was a professional statement."); *Wende*, 530 N.W.2d at 94 ("[T]he matter was submitted to the court on the written motion, resistance, attachments, *and a professional statement* by Engelhardt." (emphasis added)).

Here, the defendants offered only the hearsay statements presented through the plea negotiation emails. They used those statements to argue that *their perceptions* of Palma's authority were sufficient to summarily enforce the settlement. But against those hearsay statements, Recio offered his own testimony that he never authorized Palma to negotiate or enter a settlement with the defendants:

> At no time did Mr. Palma inform me that a demand letter had been sent to the insurance company to try and settle the case. At no time did Mr. Palma get my authority to accept, reject, or negotiate any offer on my behalf. At no time did Mr. Palma convey any offers or numbers that the insurance company was sending over. At no time did Mr. Palma get my authority to make counteroffers on my behalf. At no time was I informed of any settlement talks or negotiations for my case. I have never signed any release agreeing to accept $125,000.00 to settle my case and I have never given verbal or written approval to accept $125,000.00 to settle my case. I then terminated the relationship with the Tijerina Law Group due to lack of communication.

Recio's testimony—if believed—certainly rebuts the defendants' hearsay evidence that Palma indicated to them that he had been communicating with Recio. *See Gilbride*, 620 N.W.2d at 251 ("An attorney's offer of settlement is generally within the scope of the attorney's litigation duties. However, an attorney cannot settle or compromise a case without authority." (citation omitted)); *Dillon*, 366 N.W.2d

at 923–24 (holding that the portion of a settlement that exceeded the $150,000 limit to an attorney's authority "must be deleted from the settlement agreement"); *Starlin v. State*, 450 N.W.2d 257, 258 (Iowa Ct. App. 1989) (affirming district court's refusal to enforce settlement agreement based on evidence the client did not authorize attorney to enter settlement, explaining that "[a]n attorney cannot settle or compromise a claim of his or her client without special authority"); *see also Alexander v. Burch*, 968 So. 2d 992, 996–97 (Ala. 2006) (" 'An attorney employed to represent a litigant in the prosecution or defense of a suit is a special agent of his client and has no implied or inherent authority or right to compromise and settle it.' An agent's apparent authority must be founded upon the conduct of the principal and not upon the conduct of the agent." (quoting *Daniel v. Scott*, 455 So. 2d 30, 32–33 (Ala. Civ. App. 1984))); *King v. Driscoll*, 296 A.3d 1178, 1184–85 (Pa. Super. Ct. 2023) ("[I]f the existence of a settlement is in dispute because it is claimed that the attorney lacked authority to bind his client, the attorney's authority . . . to bind [his] client by way of agreement or compromise is not inferred, but must be proven." (omission and second alteration in original) (quoting *Brannam v. Reedy*, 906 A.2d 635, 640 (Pa. Commw. Ct. 2006))).

Given this dispute of material fact, the defendants were not entitled to a summary enforcement of the settlement agreement. So, the procedural posture matters.

**II. A Party Seeking Summary Enforcement Should Be Limited to a Summary Judgment Proceeding.**

When parties believe they have settled a dispute only to then be sued, there should be a straightforward process for seeking to enforce the settlement. There are clear policy reasons for holding parties to their agreement when they reach a settlement. *See Wright v. Scott*, 410 N.W.2d 247, 249–50 (Iowa 1987)

(en banc) (per curiam) (recognizing "principles favoring settlement"). Yet, "[o]ur rules of procedure do not [expressly] provide for a motion to enforce a settlement agreement." *Wende*, 530 N.W.2d at 94 n.1. As *Wende* recognized, a court's "authority [to enforce a settlement agreement] is ordinarily exercised two ways." *Id.* at 94. The first—a summary proceeding—is appropriate when the facts are *not* disputed. *Id.* The second is appropriate "if the material facts surrounding the settlement *are* disputed, [such that] the issue must be resolved by the finder of fact." *Id.* (emphasis added).

But this second option doesn't happen in a summary proceeding. Rather, factual disputes over whether a settlement has been properly entered "may be presented to the court or jury as an additional claim in the original action, or resolved by the court or jury *in a separate hearing.*" *Id.* (emphasis added). *Wende* cited what is now Iowa Rule of Civil Procedure 1.914, *see id.* (citing Iowa R. Civ. P. 186), under which "the court may, for convenience or to avoid prejudice, order a separate trial . . . of any separate issue." Iowa R. Civ. P. 1.914; *see also Cunningham v. Iowa-Ill. Gas & Elec. Co.*, 55 N.W.2d 552, 553 (Iowa 1952) ("The particular issue pertaining to the claimed settlement was submitted to the trial court in a separate trial under the provisions of [Iowa R. Civ. P. 186]. . . . In the instant case the issue of fact pertained to the authority of plaintiff's original attorney to make a settlement and the sufficiency and extent of the claimed settlement.").

Requiring a separate proceeding when a genuine fact dispute exists is consistent with the summary nature of the initial proceeding. This is standard summary judgment procedure. If genuine issues of fact are presented, the district court does not settle the facts; it denies the motion. *See, e.g.*, *McVey v. Nat'l Org. Serv., Inc.*, 719 N.W.2d 801, 803 (Iowa 2006).

Requiring a separate proceeding is also consistent with how other jurisdictions treat motions to enforce settlement agreements. In a case cited by *Wende*, the Eighth Circuit explained the touchstone for when a summary proceeding is appropriate to enforce a settlement agreement:

> The summary procedure (for enforcement of unperformed settlement contracts) is admirably suited to situations where, for example, a binding settlement bargain is conceded or shown, and the excuse for nonperformance is comparatively unsubstantial. On the other hand, it is ill-suited to situations presenting complex factual issues related either to the formation or the consummation of the contract, which only testimonial exploration in a more plenary proceeding is apt to satisfactorily resolve. *We commend the summary practice for use in connection with problems capable of precise resolution without attendant hazard to the interests of the parties. At the same time, it is evident that beyond that point the convenience of the summary procedure must yield to the exigencies of safeguarding all legally protected rights that are involved.*

*Wiltgen v. Hartford Accident & Indem. Co.*, 634 F.2d 398, 400 (8th Cir. 1980) (per curiam) (emphasis added) (quoting *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C. Cir. 1969)).

We should likewise address motions to enforce settlement agreements that are made in the context of a case litigating the underlying dispute by requiring the moving party to pick a horse. If the moving party asks for summary enforcement and is unsuccessful, nothing prevents them from then seeking a bench trial under rule 1.914. In no other circumstance do we allow the parties to file a vague motion that hides the ball and only decide what type of proceeding was held after the fact on appeal.

Here, it is clear from the defendants' filings that they invoked the summary process. The heading for the lead argument in the defendants' motion to enforce the settlement stated: "This Court has authority to *summarily enforce* settlement agreements *where no genuine issue as to any material fact exists*." (Emphases

added.) They repeated the "no genuine issue as to any material fact" mantra throughout. The Recios responded by filing a resistance challenging Palma's authority, supported by Recio's affidavit. Having invoked the summary process, the proceeding should be treated as one for summary judgment. *See, e.g., In re Marriage of Sprague*, No. 24–1015, 2025 WL 2237174, at *2 n.3 (Iowa Ct. App. Aug. 6, 2025) ("Lanora's motion alleged a lack of factual dispute, and John's resistance asserted a factual dispute. So, *from the start, . . .* the issue was framed as one of summary judgment." (emphasis added)).

As the master of their filings, the defendants were free to choose how to proceed. But having asked the court to "summarily enforce" the settlement agreement, the defendants were not entitled to morph the hearing into an evidentiary hearing. To the extent the district court thought it was required to settle any fact disputes under the *Wende* process, it was wrong to do so in the same proceeding. And to the extent *Wende* suggests any fact disputes should be decided in the same hearing, the process needs to be abrogated. The motion to summarily enforce the settlement agreement should have been denied, not turned into a bench trial based on the same evidence presented to determine whether there was a genuine fact dispute.

### III. The Parties Treated the Issue as a Legal Matter.

Even rummaging through the district court record as the majority does to discern whether the proceeding was more like a summary judgment proceeding or more like a bench trial, I would conclude that the parties treated the proceedings as one for summary judgment.

As noted, the heading for the lead argument in the defendants' motion to enforce the settlement stated: "This Court has authority to *summarily enforce* settlement agreements *where no genuine issue as to any material fact exists*."

(Emphases added.) The argument went on to recite the first part of the rule from *Wende*: "If the important *facts are not in dispute*, courts may summarily enforce the agreement on motion by one of the parties." 530 N.W.2d at 94 (emphasis added). Notably, the defendants did *not* set out the second part of the rule about what happens if there are fact disputes. *See id.* ("On the other hand, if the material facts surrounding the settlement are disputed, the issue must be resolved by the finder of fact. It may be presented to the court or jury as an additional claim in the original action, or resolved by the court or jury in a separate hearing." (citation omitted)).

Instead, they doubled down: "Because there is *no genuine issue as to any material fact*, Defendants are entitled to an enforcement of the settlement agreement. Plaintiffs' contention that their former attorney did not have authority, without more, is not enough *to create an issue of material fact*." (Emphases added). As any law student understands after taking civil procedure, these are words of summary judgment. *See* Iowa R. Civ. P. 1.981(3).

References to the summary judgment standard didn't stop there. The defendants discussed in detail our case of *Gilbride*, 620 N.W.2d at 251–52, explaining that "the Iowa Supreme Court concluded that the resisting defendants [in *Gilbride*] had not demonstrated that there was any record evidence *generating a genuine issue of material fact* as to whether Mr. Hudson had authority to settle on their behalf." (Emphasis added.) The defendants concluded: "Similar to *Gilbride, there is no factual issue here that would serve to rebut the presumption* that Mr. Palma had authority to represent Mr. Recio and settle on his behalf." (Emphasis added.)

In response to the motion to enforce the settlement, the plaintiffs filed a five-page resistance, accompanied by an affidavit from Recio testifying to his

relationship with Palma. Recio testified that he was never informed about any settlement negotiations, let alone about reaching an agreement. He also fired Palma—before learning anything about his negotiations with the defendants' insurer—based on Palma's "lack of communication" in general.

Defendants' reply brief then argued that Recio's affidavit was insufficient as a matter of law, even if taken as true:

> Given the facts at hand, namely that Defendants were fairly placed *under the impression* that Mr. Palma had authority and *the impression* that Mr. Recio was on board with settlement, *it simply cannot be said that Mr. Recio's own statement to the contrary is enough* to overcome the presumption that Mr. Palma had authority to settle Mr. Recio's claim in this lawsuit.

> Because Mr. Recio's affidavit, stating that Mr. Recio was never informed of the settlement negotiations taking place, is insufficient to overcome the presumption that Mr. Palma was acting with authority, Plaintiffs' Resistance is not sufficient to defeat Defendants' Motion to Enforce.

(Emphases added.)

At the hearing on the motion, the parties continued to treat the issue about Palma's authority as one of law—i.e., whether Recio's affidavit was sufficient to overcome the clear and convincing burden to rebut the presumption of authority. Counsel for defendants argued that the presumption shifted the burden to Recio to prove by clear and convincing evidence that Palma lacked authority: "The affidavit signed by Mr. Recio is not clear and convincing evidence" because the affidavit was self-serving and "[h]e can't back out of the deal simply because he thinks he can get something more later on down the road." In response, Recio's attorney reiterated: "[I]t's plaintiffs' position that the affidavit is enough for clear evidence that there was not an agreement or a meeting of the minds; and that Mr. Palma didn't have authority."

A fair reading of the district court's order suggests that it also treated the issue as one of law. Answering the "remaining question" of "whether Mr. Palma acted without authority," the court concluded:

> The *affidavit from Mr. Recio is not clear and convincing evidence* that Mr. Palma acted without authority. The Recios opted not to present testimony. There is no evidence that Mr. Palma is subject to an ethics complaint. There was no submission from Mr. Palma. The court cannot find, without "serious or substantial uncertainty," that Mr. Palma acted without authority. *Mendenhall*[ *v. Judy*, 671 N.W.2d 452, 454 (Iowa 2023)]. The presumption that Mr. Palma had authority is not rebutted.

(Emphasis added.)

Even on appeal, the defendants continued to treat the issue as one of law. Their appellee brief argued: "[T]he evidence of the written settlement negotiations that took place leave no room for any conclusion to be reached other than that Mr. Recio authorized Mr. Palma to settle on his behalf. *The sole affidavit is not sufficient* to overcome the long-standing presumption of authority . . . ." (Emphasis added.) Indeed, their appellee brief includes a heading: "*No genuine issues of material fact exists* to overcome Mr. Palma's presumed authority to settle on the Recios behalf." (Emphasis added.)

Under my review of the record, the parties and district court conducted the proceeding as a summary judgment hearing by focusing on whether Recio's affidavit was sufficient—as a matter of law—to overcome the presumption. *See, e.g.*, *In re Marriage of Sprague*, 2025 WL 2237174, at *2 n.3 ("Lanora's motion alleged a lack of factual dispute, and John's resistance asserted a factual dispute. So, *from the start*, unlike in *Wende* and *Recio*, the issue was framed as one of summary judgment." (emphasis added)). We should treat it as such. The motion to enforce the settlement fails when, as here, there is a genuine dispute of material fact.

I recognize there are hints in the district court record suggesting factfindings, which the majority opinion points out. But the fact, for instance, that the defendants chose to use Iowa Rule of Civil Procedure 1.431 (governing general motion practice) instead of rule 1.981 (governing summary judgment motions) should not defeat the substance of their motion. Indeed, *Wende* notes there is no rule specific to enforcing settlement agreements and discusses "summarily enforc[ing] the agreement on motion by one of the parties," 530 N.W.2d at 94 & n.1, not "on motion for summary judgment."

I also recognize that Recio's attorney could have done more to clarify whether they were operating under the summary proceedings suggested by the defendants' filings or whether they had moved to a bench trial.[5] But it certainly didn't feel like a bench trial. The parties presented their evidence through their prehearing filings. Neither party intended to call witnesses to provide additional testimony, assuring the district court that the thirty-minute time slot was sufficient for them to argue the motion. Recio's attorney did not object to the hearsay statements from Palma included in the defendants' emails.

The parties treated the motion as the summary proceeding identified in the defendants' opening brief: to determine whether the evidence provided created a genuine issue of fact about Palma's authority to settle Recio's case. I would too.

---

[5]This is not a matter of error preservation. When a district court grants a motion for summary judgment, we don't require parties to seek a clarification from the district court about whether it was making factfindings or deciding an issue of law to challenge the district court's ruling on appeal. The defendants asked the court to "summarily enforce" the settlement agreement, and it should have been treated as a summary proceeding. To the extent the district court made factfindings, it erred in doing so. *See McIlravy v. N. River Ins.*, 653 N.W.2d 323, 334 (Iowa 2002) (holding that the "district court erred by granting [defendant's] motion for summary judgment" where the issue of whether an insurer acted reasonably in continuing to deny a claim was for the factfinder).